IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CURTRINA MARTIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Civil Action File No.<br>1:19-CV-04106-JPB |
| HILLIARD TOI CLIATT,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Civil Action File No.<br>1:19-CV-04180-JPB |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Defendants United States of America and Special Agent Lawrence Guerra (collectively, "Defendants") respectfully submit the following Statement of Undisputed Material Facts in support of their Motion for Summary Judgment:

1. At all relevant times, Plaintiffs Curtrina Martin and her minor child, G.W., in *Martin*, and Hilliard Toi Cliatt, in *Cliatt*, lived at 3756 Denville Trace SW, Atlanta, Georgia (hereinafter, "3756 Denville").[1] Deposition of Hilliard Toi Cliatt ("Cliatt Dep.") (**Ex. A**),[2] at 10:5-24; Deposition of Curtrina Martin ("Martin Dep.") (**Ex. B**), at 11:11-12:13.

2. Other than a temporary assignment in Washington, D.C. in 2009 and 2010, Defendant Lawrence Guerra has served as a Special Agent in the FBI's Atlanta Field Office since 1997. Deposition of Lawrence Guerra, Mar. 31, 2021 ("Guerra Dep.") (**Ex. C**), at 13:5-13:23.

3. As part of Guerra's collateral duties with the FBI, Guerra has served as an FBI tactical and firearms instructor and as a member of the FBI SWAT team, including as a SWAT team leader. Guerra Dep., at 16:25-17:21, 20:25-22:3, 26:14-24.

---

[1] Although this Court's Standing Order Nos. 04-02 and 08-02 direct parties to omit or redact home addresses, the addresses identified herein already are identified in Plaintiffs' Complaints and are central to the issues alleged. *Martin*, Doc. 1 ¶¶ 10, 12; *Cliatt*, Doc. 1 ¶¶ 9, 11.

[2] The exhibits identified herein are attached to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment. Defendants separately are filing the complete transcript of each deposition cited herein provisionally under seal and are moving for leave to file each transcript under seal.

4. As an FBI Special Agent, including as a SWAT team leader, Guerra does not supervise other agents. Guerra Dep., at 17:22-19:2, 26:25-27:4.

5. In 2015, the FBI initiated an operation concerning violent gang activity in Georgia, involving murder, robbery, drug trafficking, and firearm possession by numerous individuals, including by Joseph Riley. Deposition of Joshua Thompson ("Thompson Dep.") (**Ex. D**) ¶¶ 22:9-22:4, 26:19-24; *United States v. Evans, et al.*, No. 1:16-CR-00427-AT-JKL (N.D. Ga.) (Doc. 33).

6. The FBI's operation resulted in a criminal indictment filed on October 12, 2017, against Riley and 29 other individuals. *Evans*, No. 1:16-CR-00427-AT-JKL (N.D. Ga.) (Doc. 33).

7. Following the indictment, arrest warrants were issued against the criminal defendants, including Riley, and search warrants were issued for seven locations, including Riley's address of 3741 Landau Lane SW, Atlanta, Georgia (hereinafter, "3741 Landau"). *See Evans*, No. 1:16-CR-00427-AT-JKL (N.D. Ga.) (Docs. 78-107); Declaration of Deborah Crum ("Crum Decl.") (**Ex. E**), Exs. 1 & 2.

8. The warrant for Riley's arrest ordered that he be brought "forthwith to the nearest magistrate." Crum Decl., Ex. 1.

9. The search warrant for 3741 Landau authorized execution "at any time day or night" on or before October 29, 2017. Crum Decl., Ex. 2.

10. In the affidavit requesting the search warrant, the FBI stated that the warrant would be executed "at approximately 5:00 am [sic] which is outside the hours of 6:00 a.m. and 10 p.m. to better ensure officer safety." Crum Decl., Ex. 3.

11. The FBI began planning the warrant executions that were part of the operation before the indictment and warrants had been issued. Thompson Dep., at 22:9-23:16; Guerra Dep., at 52:14-53:11, 55:21-56:5.

12. Given the magnitude of the operation, a large portion of the FBI's Atlanta Field Office, including Guerra, was involved. Deposition of Jennifer Bazzell ("Bazzell Dep.") (**Ex. F**), at 33:24-34:22; Guerra Dep., at 52:14-53:11, 58:3-16.

13. The planning included, among other things, making team assignments, coordinating with local law enforcement agencies and other FBI field offices, and preparing target sheets. Bazzell Dep., at 33:24-34:22; Guerra Dep., at 52:14-53:11, 58:3-16.

14. As to 3741 Landau, the planning also included using intelligence (such as geolocation data) to associate Riley to that address and physical surveillance on September 21, 2017, and October 3, 2017. Thompson Dep., at 38:14-42:10 & Ex. 26; Deposition of Lawrence Guerra, Aug. 4, 2021 ("Guerra Dep. II") (**Ex. G**), at 12:13-20.

15. Geolocation data is "not a navigational system" or navigational tool used by the FBI for executing a warrant but rather is an "investigative technique" or "form of intel" used by the case agent (not the SWAT team leader). Guerra Dep. II, at 21:10-22:7, 23:21-24:14, 25:21-26:3, 29:3-16.

16. During the FBI's planning process, the FBI determined that, while not all of the targets posed a high risk of violence or injury to FBI agents, based on Riley's history, Riley and 3741 Landau did. Thompson Dep., at 26:3-24; Guerra Dep., at 32:23-33:4, 52:14-53:11; Bazzell Dep., at 34:13-24.

17. As a result, the FBI decided that a FBI SWAT team would be responsible for making entry at 3741 Landau and securing it for other FBI personnel to execute the warrants. Thompson Dep., at 26:3-27:17, 51:16-24; *see also* Deposition of Michael Lemoine ("Lemoine Dep.") (**Ex. H**), at 10:20-11:14; Deposition of Gregory Donovan ("Donovan Dep.") (**Ex. I**), at 21:12-22:15 (same).

18. For each SWAT location, the FBI prepared, in addition to a general Operation Order, a SWAT Addendum to the Operation Order. Guerra Dep., at 34:21-35:21; Crum Decl., Exs. 4 & 5.

19. The Operation Order provided case background and specified, among other things, that the seven search warrants and 17 arrest warrants

(including the Riley and 3741 Landau warrants) would be executed simultaneously on October 18, 2017, at 5:00 a.m.  Crum Decl., Ex. 4.

20. The SWAT Addenda set forth SWAT-specific tactical considerations, such as mechanically breaching the front door and deploying flash bangs within the team leader's discretion, and provided that the "SWAT teams will need to achieve a near simultaneous start to ensure surprise is achieved." *See* Crum Decl., Ex. 5.

21. The SWAT Addendum for 3741 Landau also included more specific information regarding Riley and that location.  Crum Decl., Ex. 5.

22. The SWAT Addendum for 3741 Landau identified 3741 Landau as a "two-story, corner residence" and provided a large photograph of the front of the residence, an overhead image of the neighborhood with a pin denoting 3741 Landau, and directions to the property from downtown Atlanta with a corresponding map.  Crum Decl., Ex. 5.

23. As to Riley, the SWAT Addendum for 3741 Landau provided photographs of Riley, gave his physical description, and identified his alleged history of violence and gun possession, including his participation in a prior shooting.  Crum Decl., Ex. 5.

24. The photograph of 3741 Landau used in the SWAT Addendum was taken by FBI Task Force Officer Joshua Thompson during his surveillance of 3741 Landau on October 3, 2021. Thompson Dep., at 39:20-46:23 & Exs. 26 & 27; Crum Decl., Ex. 5.

25. Thompson was one of the case agents for the overall operation and the assigned Case Agent for Riley and later would participate in the warrant executions at 3741 Landau. Thompson Dep., at 27:18-22, 24:16-25:22, 66:22-68:13.

26. In addition to driving by and discreetly taking photographs of the residence, Thompson conducted surveillance of 3741 Landau for more than two hours on October 3, 2017, from "about 200 yards away using binoculars from a side street" out of concern for being seen. Thompson Dep., at 40:13-19, 44:6-9, 47:20-48:5 & Exs. 26 & 27.

27. From October 1, 2017, to October 13, 2017, Guerra was on a humanitarian mission for the FBI in Puerto Rico, following Hurricane Maria. Guerra Dep., at 55:21-56:7.

28. While Guerra was in Puerto Rico, the FBI assigned him to be the SWAT Team Leader for the warrant executions at 3741 Landau. Guerra Dep., at 55:21-56:7.

29. Guerra was provided with, among other things, the names of the other SWAT team members assigned to 3741 Landau, the Operation Order and a SWAT Addendum with additional photographs of 3741 Landau, and additional background on Riley. Guerra Dep., at 57:17-58:25; Bazzell Dep., at 46:12-47:1, 53:14-54:22, & Exs. 39 & 42.

30. After returning from Puerto Rico and in preparation for the warrant executions, Guerra conducted a "site survey" (or drive-by) of 3741 Landau. Guerra Dep., at 60:23-61:3, 65:14-67:18, 73:25-77:20, 82:1-12, 84:17-86:12.

31. During his site survey of 3741 Landau, Guerra took photographs and identified specific features that, based on his experience, would be helpful to the SWAT team entry and allow him to identify the property in the early morning of the warrant executions. Guerra Dep., at 60:23-61:3, 65:14-67:18, 73:25-77:20, 82:1-12, 84:17-86:12.

32. Guerra noted that the house was beige and split-level, located on a corner lot, had a driveway/garage on a separate street that ran perpendicular to the front door, and had a large tree in the front corner of the property. Guerra Dep., at 73:25-77:20, 84:17-86:12, & Ex. 3 ¶¶ 16-18.

33. Guerra also observed that the home had a tight stairway and stoop leading to the front door and windows on either side that would make tactical

entry difficult and provide little cover to the agents in case of gunfire. Guerra Dep., at 73:25-77:20, 84:17-86:12, & Ex. 3 ¶¶ 16-18.

34. Because Riley and the gang were known to be violent and surveillance conscious, Guerra limited his time outside the house. Guerra Dep., at 78:9-79:2.

35. After completing the site survey, Guerra drove to and chose a staging area (or meet-up location) for the warrant executions, which he communicated to the SWAT team members and other personnel who would be participating. Guerra Dep., at 65:14-25, 66:23-67:3.

36. Guerra also wrote tactical notes, which specified the "stack" formation or order in which SWAT team members would position themselves outside the front door, who would breach the door, who would carry a shield, and who would go upstairs or downstairs upon entry. Guerra Dep., at 85:14-18, 158:5-159:15 & Ex. 5.

37. On October 17, 2017, Guerra attended an operational briefing, which included presentations on (including photographs of) Riley and 3741 Landau. Guerra Dep., at 96:23-97:6, 163:11-20; Thompson Dep., at 63:13-64:7.

38. On October 18, 2017, shortly after 3:30 a.m., Guerra attempted to conduct a second drive-by of 3741 Landau with FBI Special Agent Michael

Lemoine to determine whether there might be any new conditions (*e.g.*, vehicles in front or lights indicating someone was awake) that could impact the tactical operation. Guerra Dep., at 94:6-96:12; Lemoine Dep., at 40:19-42:2.

39. Like other agents, Guerra often used a GPS device for navigation purposes. Guerra Dep., at 100:2-101:6; Lemoine Dep., at 48:4-20; Donovan Dep., at 29:3-30:11.

40. For the drive-by on October 18, 2017, Guerra used a Garmin GPS to navigate to 3741 Landau. Guerra Dep., at 100:2-101:6; Lemoine Dep., at 48:4-20; Donovan Dep., at 29:3-30:11.

41. At the time of the drive-by on October 18, 2017, it was dark outside. Guerra Dep., at 106:18-107:12.

42. Guerra also had dimmed his vehicle's headlights to avoid tipping off Riley. Guerra Dep., at 106:18-107:12.

43. When Guerra's GPS unit alerted that he and Lemoine had arrived at 3741 Landau, Guerra observed what he believed to be the same house he had seen during his previous site survey and in the photographs. Guerra Dep., at 105:9-110:6.

44. The home was beige and split-level, was located on a corner lot, had a tight stairway and stoop leading to the front door with windows on either side,

had a driveway/garage on a separate street that ran perpendicular to the front door, and had was a large tree in the front corner of the property. Guerra Dep., at 108:1-110:6; *see also* Plf. Martin's Responses to Defs.' First Requests for Admission (**Ex. J**), Nos. 1-20.

45.   Guerra and Lemoine also observed a black Camaro in the driveway, which they later would use as a reference point when locating the home. Guerra Dep., at 236:15-237:7; Lemoine Dep., at 66:11-24.

46.   Unbeknownst to Guerra and Lemoine, and despite the GPS unit indicating that they had arrived at 3741 Landau and the presence of all of the markers Guerra previously had noted, the home was Plaintiffs' home at 3756 Denville. Guerra Dep., at 105:15-22, 109:20-110:9; Lemoine Dep., at 30:25-31:13.

47.   3756 Denville faces Landau Lane, is only three or four houses (approximately 400 feet) from 3741 Landau, and does not have its address in front of or anywhere on the house. Guerra Dep., at 105:15-22, 109:20-110:9; Lemoine Dep., at 30:25-31:13; Martin Dep., at 49:1-50:15, 95:24-96:12, & Exs. 1 & 7.

48.   The address for 3756 Denville only appeared on the mailbox, which was not on Landau Lane and, instead, was at the end of the driveway on Denville Trace. Martin Dep., at 49:11-50:25 & Ex. 1.

49. Even in the daytime, the mailbox of 3756 Denville may not be visible when viewing the home from the front (on Landau Lane). Martin Dep., at 49:1-51:9 & Ex. 1.

50. Following their drive-by, Guerra and Lemoine returned to the staging area. Guerra Dep., at 110:22-112:23, 116:12-117:22, 207:19-23, 237:4-7.

51. At the staging area, the agents and other personnel participating in the warrant executions were shown photographs of Riley and 3741 Landau and were briefed on the case, the tactical plan, Riley and 3741 Landau, and the black Camaro. Guerra Dep., at 110:22-112:23, 116:12-117:22, 207:19-23, 237:4-7; Thompson Dep, at 66:21-67:12, 71:22-74:1; *see also* Deposition of Timothy Burke ("Burke Dep.") (**Ex. K**), at 28:7-30:10; Deposition of Douglas Dye ("Dye Dep.") (**Ex. L**), at 45:11-46:15, 48:16-50:10; Deposition of Tim Fehmel (**Ex. M**), at 9:19-10:21, 42:19-45:2.

52. Shortly before 5:00 a.m., the agents left the staging area for 3741 Landau in a caravan of vehicles, which included Atlanta Police Department ("APD") officers. Guerra Dep., at 128:17-129:3, 149:9-23; *see also* Crum Decl. ¶ 4(f) & Ex. 6.

53. It was still dark outside. Guerra Dep., at 206:7-12; *see also* Declaration of Ben C. McGee, III ("McGee Decl.") (**Ex. N**) ¶¶ 2-4 & Ex. 1(a)-(b).

54. When Guerra identified what he believed to be 3741 Landau based on the black Camaro, his prior preparation, and the morning drive-by, he directed the driver of his vehicle to stop in front of the house—on Landau Lane—and the other vehicles followed suit. Guerra Dep., at 236:24-237:22 & Ex. 3 ¶ 45; Dye Dep., at 44:15-46:1

55. SWAT team members and perimeter personnel quickly exited their vehicles and went to their assigned locations while focusing on the structure and any danger areas such as windows and exit points. Guerra Dep., at 130:23-131:13; Thompson Dep., at 66:22-68:13, 92:10-21; Burke Dep., at 46:17-47:10.

56. Neither Guerra nor Thompson, who had conducted more than two hours of surveillance at 3741 Landau two weeks earlier, nor any of the other agents and officers realized they were not at 3741 Landau. *E.g.*, Guerra Dep., at 140:5-15; Thompson Dep., at 66:22-68:13, 92:10-21; Deposition of Michael Pettry ("Pettry Dep.") (**Ex. O**), at 69:20-71:4 & Ex. 24.

57. Once the SWAT team was in position, Guerra loudly knocked and announced the presence of law enforcement. Guerra Dep., at 133:23-136:11; *see also* Martin Dep., at 59:12-61:25; Cliatt Dep., at 121:14-17.

58. After knocking and announcing, Guerra waited for approximately ten to twenty seconds but received no response. Guerra Dep., at 133:23-136:11; *see also* Martin Dep., at 59:12-61:25; Cliatt Dep., at 121:14-17.

59. Guerra then directed an agent to breach the door. Guerra Dep., at 133:23-136:11; *see also* Martin Dep., at 59:12-61:25.

60. An agent breached the door, and another agent deployed a diversionary device (or "flash bang") inside the front door. Guerra Dep., at 136:12-137:13.

61. The agents then entered the home at or about 5:00 a.m. McGee Decl., Exs. 1(a) & (b); Guerra Dep., at 131:16-132:1; Cliatt Dep., at 99:13-103:4 & Ex. 6; Martin Dep., at 62:2-19.

62. After the agents entered the home, Cliatt and Martin went into their bedroom closet, where Cliatt kept a shotgun. Cliatt Dep., at 121:18-23; Martin Dep. 51:16-54:14.

63. Within a minute, one or more agents (but not Guerra) located Cliatt and Martin in the closet and pulled Cliatt out of the closet, dragged him to the bedroom floor, and handcuffed him. Cliatt Dep., at 92:19-95:13, 127:1-130:1; Martin Dep., at 72:8-13; Guerra Dep., at 137:14-139:9.

64. No agent ever touched or handcuffed Martin. Martin Dep., at 71:12-14, 90:2-4.

65. According to Cliatt, "it appeared [the agents] had no interest in [Martin]. I was their primary target, so they went after me and pulled me out first." Cliatt Dep., at 128:23-129:2.

66. When Guerra entered the bedroom, Cliatt already had been detained. Guerra Dep., at 137:14-139:9.

67. Guerra observed that Cliatt did not have the same face and neck tattoos he had seen in the photographs of Riley and asked Cliatt for his name and address, which Cliatt provided. Guerra Dep., at 140:5-18; Cliatt Dep., at 93:14-22.

68. At or about that time, Lemoine saw a piece of mail that showed a different address than 3741 Landau and brought it to Guerra. Lemoine Dep., at 32:8-17, 33:21-34:6.

69. As soon as Guerra realized they were not at the correct home, he "immediately started spinning everything down." Lemoine Dep., at 33:21-34:6; *see* Guerra Dep., at 140:5-15; Burke Dep., at 14:8-20; Martin Dep., at 53:9-54:8; Cliatt Dep., at 93:14-95:13.

70. Cliatt was lifted off the ground and uncuffed, Guerra advised Plaintiffs that he would come back to explain what happened, and the agents

immediately left the home.  Cliatt Dep., at 91:19-95:13, 132:6-133:16; Martin Dep., at 53:2-54:14, 77:14-23.

71. In total, the agents were inside Plaintiffs' home for five minutes or less.  Crum Decl. ¶ 4(f) & Ex. 6; McGee Decl. ¶¶ 2-4 & Exs. 1(a) & (b).

72. Other than a sore knee for which Cliatt did not seek treatment and recovered, Plaintiffs do not claim any physical injury.  Cliatt Dep., at 150:5-19; Martin Dep., at 71:12-14.

73. At or about 5:07 a.m., the agents made entry at 3741 Landau, where Riley was arrested after attempting to flee.  Crum Decl., Ex. 6; McGee Decl. ¶¶ 2-4 & Ex. 1(c), (d), & (e); Thompson Dep., at 66:22-68:13; Burke Dep., at 23:17-25:16.

74. Once Riley and 3741 Landau were secured, Guerra returned to Plaintiffs' home where he apologized to Plaintiffs, provided his business card and the name of an FBI contact, and documented the damage caused by the entry.  Guerra Dep., at 152:17-20, 203:22-204:13; Cliatt Dep., at 95:4-8, 146:16-147:22; Martin Dep., at 54:9-14, 99:17-100:1.

75. Cliatt testified that Guerra was "kind" and "felt that he was apologetic."  *Id.* at 147:18-22; *see also* Martin Dep., at 54:19-14, 99:17-100:1.

76. No FBI policy or standard operating procedure sets forth how to locate or navigate to a target, whether to use a GPS device or what type of GPS

device must be used, whether to conduct or how to conduct a site survey or drive-by of a target location, or how long to wait before entering after knocking and announcing. *See* Pettry Dep., at 32:11-38:11, 50:19-51:20, 64:12-65:5; Guerra Dep., at 25:1-26:13, 48:5-51:23, 100:18-101:1, 203:20-21; Donovan Dep., at 27:3-28:6, 57:11-18; Lemoine Dep., at 9:12-10:18, 48:4-24.

77. According to the FBI, how to locate or navigate to a target, whether to use a GPS device or what type of GPS device must be used, whether to conduct or how to conduct a site survey or drive-by of a target location, or how long to wait before entering after knocking and announcing are discretionary, based on the facts and circumstances of each case. Pettry Dep., at 32:11-38:11, 50:19-51:20, 64:12-65:5; Guerra Dep., at 25:1-26:13, 48:5-51:23, 100:18-101:1, 203:20-21; Donovan Dep., at 27:3-28:6, 57:11-18; Lemoine Dep., at 9:12-10:18, 48:4-24.

Respectfully submitted, this 27th day of August, 2021.

KURT R. ERSKINE
*Acting United States Attorney*

s/ Aaron J. Ross
AARON J. ROSS
*Assistant United States Attorney*
Georgia Bar No. 461981
600 United States Courthouse
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone: 404-581-6228

Facsimile: 404-581-6181

*Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the documents to which this certificate is attached have been prepared in Book Antiqua font, 13-point type, which is one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C).

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to the following opposing counsel of record:

Jeffrey R. Filipovits
Spears & Filipovits, LLC
1126 Ponce de Leon Ave.
Atlanta, Georgia 30306

Lisa C. Lambert
Law Office of Lisa C. Lambert
245 N. Highland Ave., Suite 230-139
Atlanta, Georgia 30307

*Counsel for Curtrina Martin, et al.*

Zack Greenamyre
Mitchell & Shapiro LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305

*Counsel for Hilliard Toi Cliatt*

This 27th day of August, 2021.

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

*Counsel for Defendants*