IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CURTRINA MARTIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Civil Action File No.<br>1:19-CV-04106-JPB |
| HILLIARD TOI CLIATT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Civil Action File No.<br>1:19-CV-04180-JPB |

**DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' STATEMENT OF MATERIAL DISPUTED FACTS**

Pursuant to Northern District of Georgia Local Rule 56.1(B)(3), Defendants United States of America and Lawrence Guerra (collectively, "Defendants") hereby respond to Plaintiffs' Statement of Material Disputed Facts (*Martin*, Doc. 101-1; *Cliatt*, Doc. 91-1) (hereinafter, the "PSMF") as follows:

**"Background on Guerra's role in Operation Red Tape"**[1]

1.

Special Agent Lawrence Guerra was assigned to Operation Red Tape in mid-September 2017 by his supervisor, James Hurley. (Doc. 87, Guerra Dep. 52:14-21, 53:12-17).

**RESPONSE:** Undisputed. *See* Defendants' Statement of Undisputed Material Facts ("Defs.' Statement") (Doc. 83-17)[2] ¶¶ 11-12.[3]

2.

Upon initial assignment in September, he was given information regarding the number of warrants, locations to execute warrants and number of locations that would require SWAT teams. (Doc. 87, Guerra Dep. 58:3-10).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶¶ 11-13.

---

[1] Defendants generally object to Plaintiffs' use of headings in the PSMF on the grounds that Plaintiffs' headings are not statements of fact and do not comply with the provisions of Local Rule 56.1(B)(1). *See* N.D. Ga. L.R. 56.1(B)(2)(b).

[2] All citations to documents are to the CM/ECF document number in *Martin*.

[3] Defendants also generally object to the PSMF on the ground that it is not limited to the "additional facts" that Plaintiffs contend "are material and present a genuine issue for trial." *See* N.D. Ga. L.R. 56.1(B)(2)(b). Instead, it restates numerous facts already identified or sufficiently addressed in Defendants' Statement of Undisputed Material Facts (Doc. 83-17).

3.

Guerra was in Puerto Rico from October 1-13, 2017. (Doc. 87, Guerra Dep. 56:6-7).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 27.

4.

Marcus Dutton assigned Guerra to the Silver Team – or the Joseph Riley arrest and search warrants team – on October 13, 2017. (Doc. 87, Guerra Dep. 55:21-56:7, 56:21-24).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 28.

5.

Guerra does not recall how he was informed, i.e., whether in writing or verbal. (Doc. 87, Guerra Dep. 56:23-24).

**RESPONSE:** Defendants object to PSMF No. 5 on the ground that it is not material. Because PSMF No. 5 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

6.

Guerra found out the same day that Michael Lemoine would be the assistant team leader. (Doc. 87, Guerra Dep. 96:13-22).

**RESPONSE:** Defendants object to PSMF No. 6 on the ground that it is not material. Because PSMF No. 6 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

7.

The duties of a team leader include doing site surveys, formulating tactical plans, making assignments, and organizing equipment and personnel. (Doc. 87, Guerra Dep. 25:14–24).

**RESPONSE:** Although Defendants do not dispute that PSMF No. 7 accurately states Guerra's testimony and that Guerra performed each of the above-stated actions, Defendants object to PSMF No. 7 on the grounds that it is not material and purports to state an issue or legal conclusion.

Neither FBI policy nor the Fourth Amendment requires a law enforcement officer to perform any of the above-stated actions in preparation for executing a warrant. *See*, *e.g.*, Guerra Dep. (Doc. 87), at 25:1-26:13; Pettry Dep. (Doc. 96), at 32:11-38:11; Donovan Dep. (Doc. 92), at 27:3-28:6. The Fourth Amendment merely requires that an officer's conduct "was consistent with a reasonable effort to ascertain and identify the place intended to be searched.'" *Norris v. Hicks*, 855 F. App'x 515, 521-22 (11th Cir. 2021) (quoting *Maryland v. Garrison*, 480 U.S. 79, 88-89 (1987)). For qualified immunity purposes, the clearly established law in the Eleventh Circuit is only that an officer has to do more than "*nothing*" to make sure that he is leading other officers to the correct residence. *Id.* at 523 (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 955 (11th Cir. 1995)) (emphasis in *Norris*); *White*

*v. Mclain*, 648 F. App'x 838, 842 (11th Cir. 2016) (quoting *Hartsfield*, 50 F.3d at 955) (emphasis in *White*).

In *Norris*, for example, the defendant did not perform any of the above-identified activities before erroneously executing a no-knock warrant at the wrong house; yet, the Eleventh Circuit affirmed the grant of qualified immunity to him. *See* 855 F. App'x at 523-24. Likewise, in *White*, the Eleventh Circuit reversed the denial of qualified immunity to the defendant even though the only successful site survey he conducted before erroneously executing a search warrant at the wrong house was a quick drive-by of the target location three months earlier. *See White*, 648 F. App'x at 840, 842-43.

Because PSMF No. 7 is not material and purports to state legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

8.

Task Force Officer Joshua Thompson served as a case agent and team leader for the arrest warrant for Riley. (Doc. 88, Thompson Dep. 27:21-28:2.)

**RESPONSE:** Undisputed. Defs.' Statement ¶ 25.

9.

After Guerra was assigned to Silver Team, he received Riley's "baseball card," a copy of the F888, SWAT addendum and the arrest warrant for Riley. (Doc. 87, Guerra Dep. 58:17-25).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶¶ 18-23, 29.

10.

Guerra received copies of the search and arrest warrants after the judge signed off on the same; he believes this was on October 17, 2017. (Doc. 87, Guerra Dep. 61:4-11, 169:19-5, 170:16-20).

**RESPONSE:** Defendants object to PSMF No. 10 on the ground that it is not material and insofar that it states that Guerra received a complete copy of the search warrant, which is not supported by the cited evidence. Guerra testified that he only received copies of the arrest warrant and the first page of the search warrant. Guerra Dep. (Doc. 87), at 97:7-99:9, 169:19-172:5.

That Guerra only received copies of the arrest warrant and the first page of the search warrant is not material for multiple reasons. First, there is no dispute regarding the validity of either warrant. *See* PSMF No. 10. Second, there is no requirement for Guerra to have physically received a copy of either warrant, in whole or in part.[4] And here, because an evidence response team was responsible

[4] *See United States v. Bembry*, 321 F. App'x 892, 894 (11th Cir. 2009) ("Because the arrest officer arrested Bembry pursuant to a valid arrest warrant, he did not

for conducting the search, the SWAT team and case agent would not typically have personally received or reviewed the complete search warrant. Guerra Dep. (Doc. 87), at 60:11-16, 97:7-99:9, 169:14-172:5; Burke Dep. (Doc. 93), at 29:21-30:6; Thompson Dep. (Doc. 88), at 54:9-14, 62:5-17. That valid warrants had been secured would be included in the briefing and other information provided to the SWAT team. *E.g.*, Thompson Dep. (Doc. 88), at 53:12-24; Guerra Dep. (Doc. 87), at 97:10-98:4; Doc. 83-6 (SWAT Addendum). Third, Guerra independently attempted to obtain significantly more information than was conveyed in the single photograph and brief description of 3741 Landau contained in the attachments to the 3741 Landau search warrant (Doc. 87, at 121). Among other things, Guerra reviewed multiple photographs of 3741 Landau, directions, and a map; conducted a site survey of 3741 Landau, where he took additional

---

violate federal law when he did not have the warrant in hand or nearby."); *United States v. Stokes*, No. 1:14-CR-290-TWT-JKL, 2017 WL 3493053, at *5 (N.D. Ga. June 23, 2017) ("Since an officer need not have a search warrant in hand when conducting a search, it follows that if Exhibit B was not physically attached to the warrants at the time of the searches, suppression would not be required either."); *United States v. Stinson*, No. 1:05-CR-426-TWT/CCH, 2006 WL 739525, at *12 (N.D. Ga. Feb. 22, 2006) ("[T]here is no case requiring each searching agent to possess the search warrant at the time of the search. The search warrant is possessed by the agents when it is in the possession of one agent working with others and the agents have maintained some level of communication.") (citing *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985)).

photographs; attended an operational briefing that included a presentation on 3741 Landau; and attempted to conduct a drive-by of 3741 Landau using his GPS. Guerra Dep. (Doc. 87), at 57:17-58:25, 60:23-61:3, 65:14-67:18, 73:25-77:20, 82:1-12, 84:17-86:12, 94:6-96:12, 96:23-97:6, 163:11-20; Bazzell Dep. (Doc. 89), at 46:12-47:1, 53:14-54:22, & Exs. 39 & 42; Thompson Dep. (Doc. 88), at 63:13-64:7. Fourth, Guerra additionally had present at the warrant executions the collective knowledge of the other FBI personnel, including Thompson, who conducted over two hours of surveillance of 3741 Landau two weeks prior to the warrant executions. *See* Thompson Dep., at 40:13-19, 44:6-9, 47:20-48:5, & Exs. 26 & 27.

Because PSMF No. 10 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

11.

Guerra claims he only had the face cover of the warrant, not the affidavit for the warrant. (Doc. 87, Guerra Dep. 59:1-9).

**RESPONSE:** Defendants object to PSMF No. 11 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 10. Because PSMF No. 11 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

12.

Guerra claims he never saw the "Attachment B" to the search warrant, which specifically describes the location of 3741 Landau Lane, prior to the raid – only the first page of the warrant, not even the second page for certification. (Doc. 87, Guerra Dep. 171:21-172:5; Ex. 9, Doc. 87 at 121).

**RESPONSE:** Defendants object to PSMF No. 12 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 10. Because PSMF No. 12 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

13.

The full search warrant was available to Guerra had he reviewed the materials available to him. (Doc. 87, Guerra Dep. 61:4-11, 169:19-5, 170:16-20; Ex. 8, Doc. 87 at 112).

**RESPONSE:** Defendants object to PSMF No. 13 on the grounds that it is not material or supported by the cited evidence. *See* Defs.' Resp. to PSMF No. 10. Because PSMF No. 13 is not material and is not supported by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

14.

Guerra does not know if he had copies of both warrants; he usually does because he shows local Police Departments copies but he has no specific

recollection of showing Atlanta Police Department officers APD copies of the warrants. (Doc. 87, Guerra Dep. 171:14-19, 172:18-24).

**RESPONSE:** Defendants object to PSMF No. 14 on the grounds that it is not material or supported by the cited evidence. *See* Defs.' Resp. to PSMF No. 10. Guerra testified that he usually would have shown the first page of each warrant to the local police department, but did not recall whether that occurred. Guerra Dep. (Doc. 87), at 171:14-172:21. He also testified that he did not recall anyone from the Atlanta Police Department asking to see a copy of either warrant. *Id.* at 172:22-173:1. Furthermore, the Atlanta Police Department officers were briefed on the 3741 Landau address prior to the warrant executions. *Id.* at 207:19-23; Burke Dep. (Doc. 93), at 28:7-30:10; Dye Dep. (Doc. 94), at 45:11-46:15, 48:16-50:10; Fehmel Dep. (Doc. 95), at 9:19-10:21, 42:19-45:2. Because PSMF No. 14 is not material and is not supported by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

15.

Guerra does not recall receiving copies of any other investigative materials. (Doc. 87, Guerra Dep. 59:4-6).

**RESPONSE:** Defendants object to PSMF No. 15 on the ground that it is not supported by the cited evidence insofar as it mischaracterizes the chronology of events. The cited testimony pertains to when Guerra was first assigned to the

SWAT team for the warrant executions at 3741 Landau. Guerra testified that he did not recall receiving copies of any other investigative materials at that time *besides* the Operation Order, the SWAT Addendum with additional photographs of 3741 Landau, and additional background on Riley. Guerra Dep. (Doc. 87), at 57:17-58:25; *see* Bazzell Dep. (Doc. 89), at 46:12-47:1, 53:14-54:22, & Exs. 39 & 42. Because PSMF No. 15 mischaracterizes Guerra's testimony, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

16.

Guerra's first "operational involvement" occurred on October 16, 2017 – operational meaning he started tactical planning and the site survey. (Doc. 87, Guerra Dep. 60:23-61:3).

**RESPONSE:** Defendants do not dispute PSMF No. 16, except insofar as Guerra testified that he may have done the site survey at 3741 Landau on October 14, 2017, or October 15, 2017. *See* Defs.' Statement ¶¶ 30-37.

**"Site surveys"**

17.

There are two kinds of site surveys, the first is conducted well before the execution of a warrant and the purpose is to determine the location of the house, take photographs, and conduct surveillance. The second kind is conducted just before the execution of a warrant and is done to assess how the SWAT team will enter the house. (Doc. 91, Lemoine Dep. 51:8–53:5).

**RESPONSE:** Defendants object to PSMF No. 17 on the grounds that it is not material and mischaracterizes the cited evidence. A "site survey" is an informal term; there is no FBI policy on whether or how to conduct a site survey, and none is required by applicable law. Lemoine Dep. (Doc. 91), at 51:8-51:12; Defs.' Resp. to PSMF No. 7. Furthermore, a site survey is not "physical surveillance," such as that conducted at 3741 Landau on September 21, 2017, and on October 3, 2017. *See* Pettry Dep. (Doc. 96), at 40:4-41:3, 44:11-46:13; Thompson Dep. (Doc. 88), at 38:14-42:10 & Ex. 26. In his testimony, Lemoine discussed site surveys "in terms of the warrant execution process" and distinguished between the type of site survey that might be conducted shortly before (not "well before") a warrant execution and the type of site survey (sometimes referred to as a "drive-by") that might be conducted on the morning of a warrant execution. Lemoine Dep. (Doc. 91), at 41:25-4, 52:11-25, 65:10-17. Whereas the purpose of the first site survey is to identify features of the target that would impact or help the SWAT team entry, the general purpose of the second is to determine whether there are any new conditions that might impact the SWAT team entry. Guerra Dep. (Doc. 87), at 60:23-61:3, 65:14-67:18, 73:25-77:20, 82:1-12, 84:17-86:12, 94:6-96:12; Lemoine Dep. (Doc. 91), at 40:19-42:2. Because PSMF No. 17 is not material

and mischaracterizes the evidence, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

18.

During a site survey, the location of a target is specifically identified, and agents conduct reconnaissance, determine the correct route to arrive at the location, identify distinguishing features of a home, and observe any impediments or safety issues they might encounter when executing the warrant. (Doc. 91, Lemoine Dep. 65:10–24).

**RESPONSE:** Defendants object to PSMF No. 18 on the grounds that it is not material and mischaracterizes the cited evidence. *See* Defs.' Resp. to PSMF Nos. 7 & 17. Because PSMF No. 18 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

19.

The purpose of a site survey is to: ensure they are at the correct location; ensure safety of the agents, individuals in a home, and the community; and to protect the constitutional rights of any occupants in a home. (Doc. 87, Guerra Dep. 27:21-28:17).

**RESPONSE:** Defendants object to PSMF No. 19 on the grounds that it mischaracterizes the cited evidence and to the extent it purports to state a legal conclusion. *See* Defs.' Resp. to PSMF Nos. 7 & 17. Guerra testified that he conducts site surveys because he wants to ensure that he is going to have a safe

operation for the safety of the agents involved, the occupants of the target location, and the surrounding community, including by going to the correct location. Guerra Dep. (Doc. 87), at 27:8-28:17. He further testified that he conducted the same site survey for 3741 Landau that he had conducted several hundred times before, and 3741 Landau was the first time he had ended up at the wrong home. *Id.* at 28:18-23. Because PSMF No. 19 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

20.

Guerra does site surveys during daylight so he can "get a good view of the structure, the color, certain things, whether there's surveillance cameras." (Doc. 87, Guerra Dep. 75:18-20).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶¶ 31-34.

21.

Guerra also does a site survey so he can "see everything clearly and take those photos because when I come back in the morning, I usually do, like I did this time, a site survey before everybody gets there just one more time to see what has changed at the house." (Doc. 87, Guerra Dep. 76:4-9).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶¶ 31-34, 38.

22.

Guerra claims he conducted a site survey of 3741 Landau Lane on October 16, 2017. (Doc. 17-2, Guerra Decl. ¶ 10).

**RESPONSE:** Undisputed. Defs.' Statement ¶¶ 30-36.

23.

During that site survey, Guerra testified that he and Special Agent Gregory Donovan used the Google Maps application on Donovan's cell phone to navigate to the target address. (Doc. 17-2, Guerra Decl. ¶ 12, Ex. 3, Doc. 87 at 71).

**RESPONSE:** Defendants object to PSMF No. 23 on the grounds that it is not material and mischaracterizes Guerra's testimony.

While Defendants have no objection to the Court considering all of Guerra's testimony, the cited evidence refers to Guerra's December 21, 2019 declaration. Doc. 17-2. At the time of the declaration, more than two years after the site survey had occurred, both Guerra ***and Donovan*** believed they had conducted the site survey together because they were usually assigned cases together and had done so many site surveys together. Guerra Dep. (Doc. 87), at 54:5-55:6, 61:12-19; Donovan Dep. (Doc. 92), at 39:3-15, 42:8-9 ("I really thought that I was with him"). It was only after the FBI was able to obtain GPS data from Donovan's phone during the course of discovery that Guerra and Donovan learned that Donovan likely did not participate in the site survey at 3741 Landau.

*Id.* Both Guerra and Donovan thus corrected the declaration at their respective depositions. *Id.*

That Guerra did the site survey is evidenced not only by his testimony, but also (a) the photos of 3741 Landau taken before the warrant executions that only Guerra has, Guerra testified to taking, and no one else claims to have taken; (b) an e-mail from Guerra on October 16, 2017, identifying the staging area for the warrant executions that Guerra testified to identifying (and would have been identified) as part of the site survey; and (c) Guerra's tactical notes based on the site survey. Guerra Dep. (Doc. 87), at 55:7-11, 62:8-14, 64:13-67:3, 72:6-14, 75:12-76:9, 82:11-83:6, 84:24-85:16, 88:15-23, 158:7-22, 196:20-197:3, & Exs. 4 (at pp.1-2), 5, & 15; Donovan Dep. (Doc. 92), at 24:18-25:17; *compare id. with* Thompson Dep. (Doc. 88), at 46:17-23 & Ex. 27 *and with* Guerra Dep. (Doc. 87), Ex. 19 (showing 3741 Landau with a different color door after the warrant executions).

Accordingly, because PSMF No. 23 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

24.

Guerra was not truthful when he testified that he did the site survey with Donovan. (Doc. 87, Guerra Dep. 61:12-19; Ex. 3 ¶¶ 11, 19, Doc. 87 at 73–74).

**RESPONSE:** Defendants object to PSMF No. 24 on the grounds that it is not material, mischaracterizes Guerra's testimony, and purports to state a legal conclusion. *See* N.D. Ga. L.R. 56.1(B)(3). *See* Defs.' Resp. to PSMF No. 23; *also*, *e.g.*, *Davis v. Lang*, 706 F. App'x 551, 560 (11th Cir. 2017) (explaining that perjury requires an intentional false statement, and affirming summary judgment to officer even where officer erroneously testified that he had obtained probable cause information from speaking to witness on phone when in fact officer never spoke to witness on phone and obtained information from witness's invoice).

Because PSMF No. 24 is not material, mischaracterizes the record, and purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

25.

During that site survey, Guerra confirmed he was at the correct address by looking at the address on the mailbox; he noted that there was no address displayed on the front of the house, only the mailbox. (Doc. 87, Guerra Dep. 74:13-15, 82:1-6; 179:15-17).

**RESPONSE:** Undisputed.

26.

Guerra did not drive through the entire subdivision where 3741 Landau Lane is located. (Doc. 87, Guerra Dep. 207:24-208:5).

**RESPONSE:** Defendants object to PSMF No. 26 on the ground that it is not material. The vast majority of homes in the subdivision where 3741 Landau is located are past 3741 Landau and/or otherwise not on the course of travel from the entry point of the subdivision on Fairburn Road to 3741 Landau. *See* Guerra Dep. (Doc. 87), Ex. 6 (p.97). Because PSMF No. 26 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

27.

Guerra does not know many houses in the subdivision are beige or white. (Doc. 87, Guerra Dep. 207:24-208:5).

**RESPONSE:** Defendants object to PSMF No. 27 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 26. Additionally, beige and white are dissimilar colors. To the extent many houses in the subdivision were white at the time, it confirms the similarity of the colors of Plaintiffs' home and 3741 Landau, which Plaintiffs agree were not white. *See* Doc. 83-11, at 8 (Plfs.' Resp. to Defs.' Request for Admission Nos. 19 & 20). What is more, according to the pictometry imagery from the Fulton County Board of Assessors, only three or four houses

on Guerra's course of travel appear to have been beige or a similar shade during the relevant time period, with the remainder being white, grey, or red.[5] Because PSMF No. 27 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

28.

Guerra's comments regarding this site survey were: "This house is very unique. It has – it had the side-entry garage. It was on a corner with a very, very large tree in the front yard. I noted it was unique. It didn't have the address on the – on the front of the house. It had a small mailbox with the address on it." (Doc. 87, Guerra Dep. 74:10-15).

**RESPONSE:** Defendants object to PSMF No. 28 on the grounds that it is incomplete and therefore mischaracterizes Guerra's testimony. Guerra also testified that, as part of his site survey, he took note of "what's in the front yard, if there's cameras, if there's signs of children, if there's burglar bars, what the – what color the house is, the size of the house, the windows. Guerra Dep. (Doc. 87), at 74:4-9. He further testified that:

> I'm looking for the primary entry and what we call an alternate breach, a secondary entry and any – any features that would make the entry difficult. I look at the – for instance, on these homes, the approach, how much danger is it going to be to the team. How long

[5] *See* https://iaspublicaccess.fultoncountyga.gov/pictometry/pictometryipa.aspx?sIndex=0&idx=1&LMparent=20 (Dec. 2016 – Mar. 2017 & Dec. 2017 – Feb. 2018) (accessed Sept. 28, 2021).

> – how many people I can fit on the front entry, the stoop or the porch, that would dictate where we stand to avoid any fire coming from – any gunfire coming from inside the house. I look at possibly if there's a medical situation, where can I bring medics into, where I'm going to put the marked units to keep the public or the community safe, to cut off traffic while we're doing the entry in case there's a – there's a shooting. I would look at the distance from the – if it's convenient for all the caravan of vehicles from the staging area to the target location.
>
> There is a variety of things I look at, mostly tactical and practical, including special features on that home.

*Id.* at 76:17-77:11. And he testified:

> I remembered the color, very easy, it was a tan and beige house. I – I did remember the stairway and the stoop because that was a tactical concern for me because the stairs are so tight, and it was very tight for the individuals who had to go to the door, cover the door, and be by the front door and be breach – breaching the front door, because they had no cover.
>
> The reason I knew it was a split level is because it's something I look for in every house, the design of it, the architectural design of it. And I could tell from the outside it was a split level -- . . . – and that's why when I made my – my tactical plan, I put shields, one up and one down. . . . . And I remember it was a corner lot for sure, because when I make my tactical plan, I went to have the perimeter units cover the back. I knew I had to send some units up the side, where the side – the side was, the driveway was. And that tree was huge. That was one of my indicators. So it was one of the few places that had a corner lot with a huge tree. Unfortunately, so did 3756 Denville Trace.
>
> And that mailbox being on the side with the address on the side and no address being listed in front of the house was unusual for me, even after all the hundreds of operations I've done. Usually, most

> houses have a house number in the front. And that side driveway was unique. Most of the houses in that neighborhood had a – a driveway in the front. So those things were very easy for me to remember and recall.

*Id.* at 85:2-86:12. Subject to the foregoing objections, Defendants have no objection to the Court considering Guerra's complete testimony on this subject.

29.

Guerra claims he went to the correct house on his site survey. (Doc. 87, Guerra Dep. 110:18-21).

**RESPONSE:** Undisputed. Defs.' Statement ¶¶ 30-34.

30.

Guerra knew from the site survey that the target's mailbox, driveway and garage faced Landau Lane. (Doc. 87, Guerra Dep. 179:9-14, 182:3-12).

**RESPONSE:** Defendants object to PSMF No. 30 on the ground that it is not material and insofar as it mischaracterizes Guerra's testimony. Guerra testified that, while he would have seen that the mailbox, driveway, and garage of 3741 Landau faced Landau Lane during his site survey, he believed the agents were attempting to execute the warrants at 3741 Landau when they inadvertently arrived at Plaintiffs' home. Guerra Dep. (Doc. 87), at 84:22-86:12, 179:18-181:10, 219:23-220:5. That Guerra and the SWAT team went to the wrong home when attempting to execute the warrants is neither disputed nor at issue in this case.

*See* Defs.' Resp. to PSMF No. 7. Furthermore, Plaintiffs' attempt to identify specific differences between 3741 Landau with 3756 Denville or isolate additional characteristics of 3741 Landau is an exercise that only would be performed with hindsight, after a mistake has been made, and therefore is not relevant. *See*, *e.g.*, *L.T. by Snorton v. Owens*, 808 F. App'x 814, 821 (11th Cir. 2020) ("Because an officer's perspective in the field differs from that of a judge sitting peacefully in chambers, we must resist the temptation to judge an officer's actions with the 20/20 vision of hindsight.") (quoting *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009)). As Guerra testified, once he located what he believed was 3741 Landau based on his prior preparation, including his site survey and drive-by on the morning of the warrant executions, his objective would narrow on the safe execution of the warrants. Guerra Dep. (Doc. 87), at 185:18-186:19. Because PSMF No. 30 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"General information known to Guerra at the time of the warrant execution"**

31.

Guerra agrees that 3741 Landau Lane is on the left while driving into the subdivision on Landau Lane and that you have to make a hard left turn onto Cranford Drive in order to be in front of that house. (Doc. 87, Guerra Dep. 184:11-185:3; Ex. 10, Doc. 87 at 122).

**RESPONSE:** Defendants object to PSMF No. 31 on the grounds that it is not material and to the extent it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF Nos. 7 & 30. Additionally, Lemoine specifically recalled making a left turn in front of the home believed to be 3741 Landau during his drive-by with Guerra but in fact was 3756 Denville. Lemoine Dep., at 45:13-20. And the Google Maps directions to 3741 Landau in the SWAT Addendum do not include turning left onto Cranford Drive but rather state "Take Fairburn Rd SW to Landau Ln SW in Atlanta." Guerra Dep. (Doc. 87), Ex. 6 (p.95). Because PSMF No. 31 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

32.

Guerra agrees that he would have had to make a hard left turn onto Cranford Drive to get a picture of the front of the house at 3741 Landau Lane

during his site survey even though he describes the road as a "horseshoe." (Doc. 87, Guerra Dep. 175:24-176:5).

**RESPONSE:** Defendants object to PSMF No. 32 on the grounds that it is not material and to the extent it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF Nos. 7, 30, & 31. The course of travel resembles a horseshoe; Guerra testified that he recalled turning to his left and seeing the front door to the home on his right, which was uniquely true to both 3741 Landau and to 3756 Denville based on Guerra's course of travel. *See* Guerra Dep. (Doc. 87), Ex. 6 (p.97). Because PSMF No. 32 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

33.

The search warrant includes a picture and a description of the target location, 3741 Landau Lane. (Doc. 87, Guerra Dep. 174:15-175:6; Ex. 9, Doc. 87 at 121).

**RESPONSE:** Defendants object to PSMF No. 33 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 10. Because PSMF No. 33 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

34.

The search warrant states the house at 3741 Landau Lane is ~2,450 square feet which is close to the estimate provided by Guerra. (Doc. 87, Guerra Dep. 175:2-7. *See also* Doc. 87 at 118, 121, Guerra Exs. 8, 9, Doc. 87 at 112–121)

**RESPONSE:** Undisputed.

35.

Guerra agrees that the description stating the front door of the house at 3741 Landau Lane faces Cranford Drive is an important fact. (Doc. 87, Guerra Dep. 175:9-22).

**RESPONSE:** Defendants object to PSMF No. 35 on the grounds that it is not material and to the extent it mischaracterizes Guerra's testimony. *Se* Defs.' Resp. to PSMF Nos. 7, 10, 30, & 31. Because PSMF No. 35 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

36.

The warrant described that the garage and driveway and mailbox for 3741 Landau Lane are located on Landau Lane. (Doc. 87, Guerra Dep. 176:10-17).

**RESPONSE:** Defendants object to PSMF No. 36 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 7, 10, and 30. Because PSMF No. 36 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

37.

Guerra agrees this is an important fact. (Doc. 87, Guerra Dep. 176:10-17).

**RESPONSE:** Defendants object to PSMF No. 37 on the grounds that it is not material and to the extent it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF Nos. 7, 10, and 30. Because PSMF No. 37 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

38.

The SWAT Addendum PowerPoint was prepared by Guerra and FBI Tactical Specialist Jennifer Bazzell. (Doc. 89 at 51:13-52:1).

**RESPONSE:** Defendants object to PSMF No. 38 insofar as it mischaracterizes Bazzell's testimony. Bazzell testified that she made the SWAT Addendum PowerPoint at the direction of the primary case agent for the overall operation, Paul Szabo. Bazzell Dep. (Doc. 89), at 35:2-12, 45:3-10. The PowerPoint applied to multiple targets and utilized information supplied by other individuals, including, for example, Thompson's photographs of 3741 Landau. *Id.* at 21:1-18, 35:7-12. On October 11, 2017, Bazzell sent a draft of the PowerPoint to Guerra, while Guerra was in Puerto Rico. *See id.*, Ex. 39. Bazzell testified that she does not recall whether she and Guerra had any discussions

about the PowerPoint. *Id.* at 47:24-48:1, 53:6-10. Because PSMF No. 38 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

39.

Guerra stated that he did not have the SWAT Addendum PowerPoint until October 17, 2017 and that he only received a paper copy. (Doc. 87, Guerra Dep. 88:6-12, 163:21-24; Doc. 89, Bazzelle Dep. 46:12-20, 52:22-53:5; Exs. 39, 41, Doc. 89 at 84, 119).

**RESPONSE:** Defendants object to PSMF No. 39 on the grounds that it is not material and to the extent it mischaracterizes the evidence. At Guerra's deposition, Guerra was shown a copy of the SWAT Addendum signed by the Special Agent in Charge (SAC) and Assistant Special Agent in Charge (ASAC). Guerra Dep. (Doc. 87), at 159:24 Ex. 6. He testified that he believes he received a paper copy at the operational briefing on October 17, 2017. *Id.* at 163:11-24. Whether Guerra recalled it or not at the time of his deposition, documentary evidence later produced in the case shows that Bazzell also sent Guerra a draft (unsigned) copy of the SWAT Addendum by e-mail on October 11, 2017, and that Guerra acknowledge receipt at the time. *Compare id. with* Bazzell Dep. (Doc. 89), Exs. 39 & 42. Because PSMF No. 39 is not material, and to the extent PSMF

No. 39 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

40.

But Guerra actually received the SWAT Addendum PowerPoint via email on October 11, 2017 and acknowledged receipt. (Doc. 87, Guerra Dep. 88:6-12, 163:21-24; Doc. 89, Bazzelle Dep. 46:12-20, 52:22-53:5; Exs. 39, 41, Doc. 87 at 84, 119).

**RESPONSE:** Defendants object to PSMF No. 40 on the ground that it is not material and to the extent it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF No. 39. Because PSMF No. 40 is not material, and to the extent PSMF No. 40 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

41.

Guerra does not know who took the pictures in the SWAT Addendum. (Doc. 87, Guerra Dep. 88:13-14).

**RESPONSE:** Defendants object to PSMF No. 41 on the ground that it is not material. There is no dispute that the photographs were taken by FBI Task Force Officer Joshua Thompson during his surveillance of 3741 Landau on October 3, 2017. *See* Doc. 101-2 ¶ 24. Because PSMF No. 41 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

42.

Guerra recalls seeing the picture of 3741 Landau Lane on page 10 of the SWAT Addendum PowerPoint on October 17, 2017. (Doc. 87, Guerra Dep. 163:7-13; Ex. 6, Doc. 87 at 96).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 37.

43.

The SWAT Addendum PowerPoint contains directions directly to Riley's home, with an actual Google map overview of the neighborhood with Riley's house marked. (Doc. 87, Guerra Dep. 164:5-19; Doc. 87 at 95, 97, Guerra Dep. Ex. 6, Doc. 87 at 96).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 22. Defendants note that the Google Maps directions to 3741 Landau Lane in the SWAT Addendum do not include turning left onto Cranford Drive but rather state "Take Fairburn Rd SW to Landau Ln SW in Atlanta." Guerra Dep. (Doc. 87), Ex. 6 (p.95).

44.

Guerra had the map on the SWAT Addendum PowerPoint in addition to his GPS the day of the raid. (Doc. 87, Guerra Dep. 110:12-13).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶¶ 29, 39-43.

45.

Bazzell created the map, which includes step by step written instructions, as well as the map with the overview of the neighborhood. (Doc. 89, Bazzell Dep. 48:19-49:7, 49:14-19).

**RESPONSE:** Defendants object to PSMF No. 45 insofar as Google Maps directions are not "step by step written instructions." Defendants do not dispute that the SWAT Addendum contained a map, directions to 3741 Landau from downtown Atlanta, and an overhead image of the neighborhood with a pin denoting 3741 Landau. Defs.' Statement ¶ 22. Subject to the foregoing objection, the Court properly may consider PSMF No. 45 for the purpose of Defendants' Motion for Summary Judgment.

46.

The SWAT Addendum PowerPoint states definitively that Riley drives the white Nissan. (Doc. 89, Bazzell Dep., Ex. 39 at 20, Doc. 89 at 103).

**RESPONSE:** Defendants object to PSMF No. 46 on the grounds that it is not material and is not supported by the cited evidence. The SWAT Addendum states that a white Nissan driven by Riley was a "possible vehicle" at the location. Bazzell Dep. (Doc. 89), Ex. 39 (p.103). Because PSMF No. 46 is not material and is not supported by record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

47.

Riley was never identified as being associated with black Camaro. (Doc. 89, Bazzell Dep., Ex. 39 at 13, 20, Doc. 89 at 96, 103).

**RESPONSE:** Defendants object to PSMF No. 47 on the ground that it is not material. During Guerra's and Lemoine's drive-by on the morning of the warrant executions, they observed a black Camaro in the driveway of the home they believed was 3741 Landau, which they later used as a reference point when locating the home for the warrant executions. Defs.' Statement No. 45. While Plaintiffs seem to suggest that the presence of the black Camaro should have alerted Guerra or the other agents to the possibility that the home was not 3741 Landau, Thompson testified that it was "not uncommon in [their] line of work if there's a different vehicle" at a target address. Thompson Dep. (Doc. 88), at 12:20-23. This was particularly true for Riley because he "dealt with vehicles" as part of his criminal enterprise and also had numerous associates to whom a vehicle at the target location might pertain. *Id.* at 12:24-13:23. As a result, despite having knowledge of the target list of vehicles, Thompson testified that the presence of the black Camaro in the driveway "did not stand out either way" to him. *See id.* at 13:24-14:13. Furthermore, that one vehicle was in the driveway did not preclude, and logically might increase, the possibility that one or two additional vehicles were within the closed two-car garage. Because PSMF No. 47 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Reasons to doubt whether Guerra conducted an initial site survey"**[6]

48.

Guerra's Declaration filed in support of his Motion to Dismiss states he did the site survey on Oct 16, but in his deposition, he claimed he did not know what day he did the survey – it could have been October 14, 15, or 16. (Doc. 87, Guerra Dep. 65:14-20, 67:11-14; Ex. 3 ¶ 10).

**RESPONSE:** Defendants object to PSMF No. 48 on the grounds that it is not material and mischaracterizes Guerra's testimony. Guerra testified that he believes he did the site survey on October 16, 2017, because that is the day he e-mailed the SWAT team members with the location of the staging area (or meet-up location) for the warrant executions, which he chose after conducting the site survey; however, he conceded that it is possible he did the site survey on October 14, 2017, and October 15, 2017. Guerra Dep. (Doc. 87), at 65:14-67:14. Because PSMF No. 48 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

[6] Defendants specifically object to this header on the grounds it is not supported by the cited evidence that follows, is not material, and purports to state an issue or legal conclusion.

49.

Guerra has no records that would show what day he did the site survey. (Doc. 87, Guerra Dep. 66:9-14).

**RESPONSE:** Defendants object to PSMF No. 49 on the grounds that it mischaracterizes Guerra's testimony and is not material. First, the undisputed evidence is that Guerra conducted his site survey on October 14, 15, or 16, 2017; Plaintiffs' theory that Guerra did not conduct the site survey on one of those days is based purely on speculation or "some metaphysical doubt as to the material facts," which are insufficient to create a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original). Second, while there may not be a record that shows exactly what day Guerra conducted the site survey, the following records support his testimony that he did the site survey on October 14, 15, or 16, 2017: (a) the October 16, 2017 e-mails he sent advising of the staging area (or meet-up location) that he had chosen for the warrant executions based on the site survey; (b) his tactical notes that he authored on October 16 or 17, 2017 based on the site

survey, which specified the "stack" formation or order in which SWAT team members would position themselves outside the front door and, among other things, who would go upstairs or downstairs upon entry; and (c) the photographs he took of 3741 Landau during his site survey which were shown at the pre-execution briefing on October 18, 2017. Guerra Dep. (Doc. 87), at 61:20-62:7, 63:5-13, 65:14-25, 66:23-67:3, 85:14-18, 153:25-154:16, 158:5-159:15, & Exs. 4, 5, & 15; Fehmel Dep. (Doc. 95), at 40:13-22 & Ex. 36. Additionally, Donovan's deposition testimony that he too chooses a staging area at the time he conducts a site survey also supports Guerra's testimony that he did the site survey on October 14, 15, or 16, 2017. *See* Donovan Dep. (Doc. 92), at 24:18-25:17.

Because PSMF No. 49 mischaracterizes the record and is not material, (and in fact the record shows that Guerra did the site survey on October 14, 15, or 16, 2017), the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

50.

The FBI collects GPS data from its agents' cell phones; the data goes straight from the agent's phone to the FBI's "Palentir" database. (Rule 30(b)(6) (Crum) Dep. 18:13-15).

**RESPONSE:** Defendants object to PSMF No. 50 on the grounds that it is not material and mischaracterizes Crum's testimony. The FBI has the capacity ***to***

***attempt*** to collect GPS data from its agents' and task force officers' phones, which, if such GPS data available, would be located in Palentir. Crum Dep. (Doc. 103), at 9:22-23, 18:4-12, 19:24-20:2. None of Plaintiffs' Rule 30(b)(6) topics concerned a technical understanding of how the software or other technology that allows for such GPS data collection works or might not work, and Crum expressly testified that she did not understand how the software or other technology used works or might not work. *Id.* at 18:7-15, 19:24-20:2, & Ex. 32.

For the relevant time period here, the FBI was unable to locate GPS data for ***seven (7)*** of the sixteen FBI agents and officers that participated in the warrant executions at 3741 Landau, including Guerra. Crum Decl. (Doc. 83-6) ¶¶ 4(f) & 5. There is no evidence that the FBI—and certainly not Guerra—destroyed or failed to produce available GPS data; to the contrary, Crum testified that the FBI conducted multiple searches for the missing GPS data and still could not locate it. Crum Dep. (Doc. 103), at 20:13-25. Furthermore, even for the available GPS data, each GPS data log expressly contains a "Caveat" that software bugs and other processes may have impacted the quantity and completeness of the GPS data. *E.g.*, Doc. 83-6, at 53.

Because PSMF No. 50 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

51.

The FBI has no GPS data for Guerra from October 14-16, 2017 and cannot explain why; it only produced limited GPS data for Guerra after the raids on October 18, 2017 were completed. (Rule 30(b)(6) (Crum) Dep. 20:17-25, 36:1- 6, 36:11-15, 37:5-10).

**RESPONSE:** Defendants object to PSMF No. 51 on the grounds that it is not material and mischaracterizes the cited evidence. *See* Defs.' Resp. to PSMF No. 50. Because PSMF No. 51 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

52.

At the time Guerra signed his declaration, he "believed" Donovan was with him; in fact, his declaration is very specific and says that he drove and Donovan rode in the passenger seat and that they searched for the staging area together. (Doc. 87, Guerra Dep. 61:12-19; Doc. 87 at 73–74, Guerra Dep. Ex. 3 ¶¶ 11, 19).

**RESPONSE:** Defendants object to PSMF No. 52 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 23. Because PSMF No. 52 is not

material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

53.

Donovan's geolocation data does not support Guerra's "recollection" that he was with him because Donovan's data does not show him near 3741 Landau Lane that day. (Doc. 87, Guerra Dep. 67:15-68:4, 68:14-18, 69:23-70:3; Doc. 92, Donovan Dep. 39:3–40:1).

**RESPONSE:** Defendants object to PSMF No. 53 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 23. Because PSMF No. 53 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

54.

The only documentation Guerra has of the site survey are photos – these do not show who, if anyone, was with him and he did not take any notes regarding this alleged site survey. (Doc. 87, Guerra Dep. 55:7-11, 82:11-12).

**RESPONSE:** Defendants object to PSMF No. 54 on the grounds that it is not material or supported by the cited testimony. *See* Defs.' Resp. to PSMF No. 49. The questions posed to Guerra were whether he had documents that showed who, if anyone, did the site survey with him and whether he made written notes during the site survey. Guerra Dep. (Doc. 87), at 55:7-11, 82:11-12. Because PSMF No. 54 is not material and is not supported by the record, and the record

actually contradicts PSMF No. 54, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

55.

Guerra did not retain native format of the photographs, only paper copies. (Doc. 87, Guerra Dep. 62:2-7, 64:19-65:2).

**RESPONSE:** Defendants object to PSMF No. 55 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 49. Furthermore, there is no evidence that Guerra was required to retain native copies of the photographs he took during the site survey, which were not evidentiary in nature but were for his own tactical planning. *See* Guerra Dep. (Doc. 87), at 63:5-13; Defs.' Resp. to PSMF No. 17 (distinguishing between a site survey and formal physical surveillance). Because PSMF No. 55 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

56.

Guerra provided, at best, mixed testimony regarding who took the pictures during this alleged site survey:

A. Guerra's declaration states that "either SA Donovan or I took photographs of the residence with one of our cellphones," but now he doesn't know who took them, but "believes" that he did, then says "someone did." (Doc. 87, Guerra Dep. 62:9-15, 66:1-3; Ex. 3, ¶ 13).

B. Guerra claims he took the pictures in Exhibit 4 from his van while driving by Landau Lane. (Doc. 87, Guerra Dep. 154:4-16; Ex. 4, Doc. 87 at 83–85).

C. He does not know who took the photos, but "believes" that he did; "someone did." (Doc. 87, Guerra Dep. 62:9-15, 66:1-3).

D. Guerra later testified that he took the photos. (Doc. 87, Guerra Dep. 83:3-6, 87:3).

E. Then Guerra testified he doesn't know who took the photos but he thinks his hand is in a reflection of the picture flipping a piece of paper. (Doc. 87, Guerra Dep. 154:20-155:4; see also Doc. 87 at 83, Guerra Dep. Ex. 4, Doc. 87 at 83–85).).

F. Guerra does not recall if he took the photographs on his cell phone, it could have been a camera. (Doc. 87, Guerra Dep. 62:16-19, 83:3-6).

**RESPONSE:** Defendants object to PSMF No. 56 on the grounds that it mischaracterizes Guerra's testimony, is not material, and does not comply with the provisions of Local Rule 56.1(B)(1). *See* Defs.' Resp. to PSMF Nos. 23, 49, & 55. Because PSMF No. 56 mischaracterizes the record, is not material, and does not comply with Local Rule 56.1(B)(1), the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

57.

Guerra only made notes regarding the staging area for the raids, not for 3741 Landau Lane, the target house. (Doc. 87, Guerra Dep. 82:13-16).

**RESPONSE:** Defendants object to PSMF No. 57 on the grounds that it mischaracterizes Guerra's testimony and is not material. *See* Defs.' Resp. to PSMF Nos. 28 & 49. In addition to personally taking photographs of 3741 Landau during his site survey and making tactical notes pertaining to the SWAT team entry at 3741 Landau based on his site survey, Guerra also received and reviewed numerous information, including documents and photographs, pertaining to 3741 Landau, via, for example, the SWAT Addendum and the October 17, 2017 operational briefing. *See* Defs.' Resp. to PSMF No. 10. Because PSMF No. 57 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

58.

Guerra claims he would *not* have uploaded the photos to the electronic case file because they were just for "briefing" or "site survey" and were not evidentiary in nature. (Doc. 87, Guerra Dep. 62:20-63:13).

**RESPONSE:** Defendants object to PSMF No. 58 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 55. Because PSMF No. 58 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

59.

Each member of the FBI's task force had the ability to upload photographs directly to the FBI's electronic case file. (Doc. 88, Thompson Dep. 33:15–23).

**RESPONSE:** Defendants object to PSMF No. 59 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 55. Because PSMF No. 59 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

60.

Special Agent William Murdock testified that any photos he takes would be digitally attached to the case file and noted in his surveillance report. (Murdock Dep. 23:6–10).

**RESPONSE:** Defendants object to PSMF No. 60 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 55. Furthermore, Murdock's testimony did not pertain to site surveys but rather pertained to his physical surveillance of 3741 Landau on September 21, 2017. Murdock Dep. (Doc. 104), at 21:19-23:10; *see also* Defs.' Resp. to PSMF No. 17. Because PSMF No. 60 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

61.

Thompson also testified that any photos taken should be uploaded to the digital file. (Doc. 88, Thompson Dep. 32:6–15).

**RESPONSE:** Defendants object to PSMF No. 61 on the grounds that it mischaracterizes Thompson's testimony and is not material. *See* Defs.' Resp. to PSMF No. 55. Thompson's testimony also did not pertain to site surveys but rather pertained to his physical surveillance of 3741 Landau on October 3, 2017. Thompson Dep. (Doc. 88), at 31:20-32:15; *see also* Defs.' Resp. to PSMF No. 17. In fact, Thompson expressly testified that he did not consider his physical surveillance on October 3, 2017 to be a site survey. *Id.* at 31:20-22. Because PSMF No. 61 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

62.

After photos are taken, they are transferred to the case file by attaching the camera to the computer, downloading the photographs, and digitally attaching the photographs to the records management system. (Murdock Dep. 24:12–22).

**RESPONSE:** Defendants object to PSMF No. 62 on the grounds that it mischaracterizes Murdock's testimony and is not material. *See* Defs.' Resp. to PSMF Nos. 17, 60, & 61. Because PSMF No. 62 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

63.

In the alternative, photos can be saved to the case file by burning a copy of the photos to a disc and then place the disc in an envelope inside the physical case file. (Murdock Dep. 25:7–26:9).

**RESPONSE:** Defendants object to PSMF No. 63 on the grounds that it mischaracterizes Murdock's testimony and is not material. *See* Defs.' Resp. to PSMF Nos. 17, 60, & 61. Because PSMF No. 63 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

64.

Murdock believes that if he took photos of Landau Lane and there would be a 302 documenting that. (Murdock. 26:2–10).

**RESPONSE:** Defendants object to PSMF No. 63 on the grounds that it mischaracterizes Murdock's testimony and is not material. *See* Defs.' Resp. to PSMF Nos. 17, 60, & 61. Because PSMF No. 64 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Riley's Geolocation Data Known to Guerra on the Day of the Raid"**[7]

65.

[7] Defendants specifically object to this header on the grounds it is not supported by the cited evidence that follows, is not material, and purports to state an issue or legal conclusion.

Both Guerra and Task Force Officer Joshua Thompson were receiving text alerts of Riley's geolocation, which provided a link to a Google Map, from September 21, 2017 through the day of the raid, October 18, 2017. (Doc. 90, Guerra Dep. Vol. II 12:8-11, 23:21-24:4, 24:21-25:8, 26:5; Doc. 90 at Ex. 48, Ex. 59).

**RESPONSE:** Defendants object to PSMF No. 65 on the grounds that it is not supported by the cited evidence and is not material. When FBI personnel are set up to receive geolocation data on a suspect, they do not receive an actual text alert of the suspect's geolocation but rather receive a link that, if clicked, would open to a static Google Map image. Guerra II Dep. (Doc. 90), at 23:21-24:14. While the Google map image shows the suspect's geolocation with a pin drop or tear drop, it does not show the user's location or otherwise provide directions from the user's location to the suspect. *Id.* In other words, it is not set up to be a navigational system or navigational tool for a SWAT team leader, but rather is an investigative technique or form of intel used by a case agent. *Id*. at 21:19-22:7, 23:21-24:14, 25:21-26:3, 29:3-16; *see* Murdock Dep. (Doc. 104), at 11:15-12:12, 16:1-9. Nor would there be any obligation on a SWAT team leader personally to review a suspect's geolocation data when attempting to execute a warrant. *See* Defs.' Resp. to PSMF No. 7. Consistent with the foregoing, ***eight (8)*** different FBI agents, including case agent Thompson, case agents Paul Szabo and Jason Cleary (the primary case agents for the overall operation), and case agent Brittany

James, were receiving the geolocation text alerts for Riley during the relevant time period. Guerra Dep. II (Doc. 90), Exs. 48 & 59 (Doc. 90, at pp. 15-16 & 97); Bazzell Dep. (Doc. 89), at 35:2-6; Murdock Dep., at 32:7-9.

Had the geolocation data shown Riley not to be at 3741 Landau at the time of the warrant executions, Guerra would have expected one of the case agents to inform him of that. Guerra Dep. II (Doc. 90), at 29:17-25. But the geolocation data merely confirmed that Riley was at 3741 Landau. *Id.*, Ex. 59. Thus, even had Guerra personally reviewed the geolocation data, it would have been the same map image that he already had via the SWAT Addendum and would not have changed the outcome that occurred notwithstanding his site survey, attempted drive-by, and other preparations. *See* Defs.' Resp. to PSMF No. 10.

Because PSMF No. 65 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

66.

Guerra disabled these notifications, requesting "do not disturb" (DND) on October 2, 2017 at 2:05 p.m. EDT. (Doc. 90, Guerra Dep. Vol. II at 22:14-22, Doc. 90 at 97, Guerra Dep. Vol. II, Ex. 59).

**RESPONSE:** Defendants object to PSMF No. 66 on the grounds that it mischaracterizes Guerra's testimony and is not material. *See* Defs.' Resp. to

PSMF No. 65. Guerra requested the "do not disturb" on October 2, 2017, after he left for Puerto Rico on October 1, 2017, and requested that the alerts be re-enabled on October 15, 2017, after he had returned from Puerto Rico. Guerra Dep. II (Doc. 90), Ex. 59; Guerra Dep. (Doc. 87), at 55:21-56:7. Because PSMF No. 66 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

67.

In order to request "do not disturb" (DND) on the system, the user has to manually hit "stop or disable" or request a tech agent to disable it. (Doc. 90, Guerra Dep. Vol. II at 22:23-23:4).

**RESPONSE:** Defendants object to PSMF No. 67 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 65 & 66. Because PSMF No. 67 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

68.

Guerra requested it to be enabled again on October 15, 2017 at 5:05 p.m. EDT. (Doc. 90 at 23:5-7; Ex. 59).

**RESPONSE:** Defendants object to PSMF No. 68 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 65 & 66. Because PSMF No. 68 is not

material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

69.

Guerra requested DND on October 18, 2017 at 6:02 a.m. EDT – the same day as the raids. (Doc. 90 at 23:8-11; Ex. 59).

**RESPONSE:** Defendants object to PSMF No. 69 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 65 & 66. Furthermore, the warrant executions already had occurred, and Riley already had been arrested (at 3741 Landau), prior to 6:02 a.m. EDT. Crum Decl. (Doc. 83-6), Ex. 6 (pp. 49-78), McGee Decl. (Doc. 83-15), Ex. 1(c), (d), & (e); Thompson Dep. (Doc. 88), at 66:22-68:13. Because PSMF No. 69 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

70.

Guerra had his FBI cell phone the day of the raid and took it to the staging area and had it on his person the entire time during the raids. (Doc. 90 at 19:25-21:9).

**RESPONSE:** Defendants object to PSMF No. 70 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 65. Because PSMF No. 70 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

71.

Thompson had his FBI cell phone the day of the raid as well; he left it in the car when he exited the vehicle to execute the warrants. (Doc. 88, Thompson Dep. 69:1-7).

**RESPONSE:** Defendants object to PSMF No. 71 on the grounds that it is not material and mischaracterizes Thompson's testimony. *See* Defs.' Resp. to PSMF No. 65. Thompson testified that he did not know if he had his phone in his vest but would have had a radio. Thompson Dep. (Doc. 88), at 69:5-7. Because PSMF No. 71 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

72.

The Riley geolocation data provided to Guerra and Thompson on the day of the raids, October 18, 2017, showed the following (note, Eastern Daylight Savings Time is 4 hours ahead of Greenwich Mean Time (GMT). (Doc. 90, Guerra Dep. Vol. II at 13:24-14-8):

A. At 3:36 a.m. EDT, the coordinates show Riley's home.2 (Doc. 90 at 14:14-17; Ex. 49, Ex. 51 (red line)).

B. At 3:51 a.m. EDT, the coordinates are in between Riley's home and a neighbor's house. (Doc. 90 at 14:22-15:11; Ex. 49, Ex. 52 (dark green line)).

C. At 4:06 a.m. EDT, the coordinates show next door to Riley's home. (Doc. 90 at 15:15-20; Ex. 49, Ex. 53 (purple line)).

D. At 4:21 a.m. EDT, the coordinates show Riley's home. (Doc. 90 at 15:25-16:11; Ex. 49, Ex. 54 (orange line)).

E. At 4:36 a.m. EDT, the coordinates are in between Riley's home and a neighbor's house. (Doc. 90 at 16:16-20; Ex. 49, Ex. 55 (blue line)).

F. At 4:51 a.m. EDT, the coordinates are in between Riley's home and a neighbor's house. (Doc. 90 at 16:25-17:2; Ex. 49, Ex. 56 (pink line)).

G. At 5:06 a.m. EDT, the coordinates are in the corner of Riley's neighbor's house. (Doc. 90 at 17:6-9; Ex. 49, Ex. 57 (neon green line)).

H. At 5:21 a.m. EDT, the coordinates show Riley's home. (Doc. 90 at 17:14-16; Ex. 49, Ex. 58 (brown line)).

**RESPONSE:** Defendants object to PSMF No. 72 on the grounds that it is not material and mischaracterizes the evidence. *See* Defs.' Resp. to PSMF No. 65. Because PSMF No. 72 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

73.

Despite all of the evidence shown through Exhibits 51-58, Guerra refused to admit that none of the coordinates were anywhere near Plaintiffs' home and incredulously claims that "to him, it was near…the plaintiff's house." (Doc. 90 at 19:2-9).

**RESPONSE:** Defendants object to PSMF No. 73 on the grounds that it mischaracterizes Guerra's testimony and is not material. *See* Defs.' Resp. to PSMF No. 65. Guerra testified that the accuracy of geolocation data generally

may vary, as given in Plaintiffs' own above-referenced examples and as Guerra personally had as a case agent, and that the geolocation data shown to him at the deposition was both "near" 3741 Landau and Plaintiffs' home. Guerra Dep. II (Doc. 90), at 18:8-19:9. Because PSMF No. 73 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

74.

Guerra admits that for this information to be relayed to him was "significant." (Doc. 90 at 29:17-25).

**RESPONSE:** Defendants object to PSMF No. 74 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 65. Because PSMF No. 74 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

75.

The range of uncertainty of Riley's cell phone location in Exhibits 51-58 ranges from 29-78 feet. (Doc. 90 at Ex. 49).

**RESPONSE:** Defendants object to PSMF No. 75 on the grounds that it is not material and mischaracterizes the cited evidence. *See* Defs.' Resp. to PSMF Nos. 65 & 73. Furthermore, the precision location of the geolocation data is in miles, not feet; and, even an uncertainty range of 29 to 78 feet may incorrectly

purport to show a suspect somewhere other than the residence in which he actually is located. Guerra Dep. II (Doc. 90), Ex. 49; Plfs.' PSMF No. 72. Because PSMF No. 75 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

76.

The distance from the Plaintiffs' home to Riley's home is 436 feet. (Guerra Dep. 105:151-22, 109:20-110:9; Lemoine Dep. 30:25-31:13).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 47. While the maximum distance between the homes is 436 feet, the door-to-door distance is 279 feet. https://www.google.com/maps/dir/33.7125244,-84.5045328/33.7132963,-84.5048332/@33.7129789,-84.5057527,18z/data=!3m1!4b1!4m2!4m1!3e0 (accessed Sept. 28, 2021).

**"Silver Team Pre-raid meeting at the staging area"**

77.

Guerra was the lead for the Silver Team, which consisted of SWAT or entry team and the perimeter team. (Doc. 87, Guerra Dep. 88:24-89:13, 91:16-18)

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 28.

78.

Donovan was not on the Silver Team; he was a case agent for another location. (Doc. 87, Guerra Dep. 90:11-13)

**RESPONSE:** Defendants object to PSMF No. 78 on the ground that it is not material. Because PSMF No. 78 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

79.

On October 18, 2017, Guerra arrived at the staging area at ~3:30am. (Doc. 87, Guerra Dep. Ex. 3, ¶ 25).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 38.

80.

Guerra chose Emmanuel Baptist Church as his staging area because "senior team leader" told him Georgia World Congress Center was too far from the target. (Doc. 87, Guerra Dep. 161:23-162:17)

**RESPONSE:** Defendants object to PSMF No. 80 on the grounds that it is not material and mischaracterizes Guerra's testimony. Guerra was not asked and did not testify as to why he chose the New Emmanuel Baptist Church over a different location (other than the Georgia World Congress Center) as the staging area. *See* Guerra Dep. (Doc. 87), at 161:23-162:17. Donovan testified, when he does a site survey, he chooses a staging area that is close enough to the target location that the agents can arrive there quickly but far enough away so as not to tip off the suspect. Donovan Dep. (Doc. 92), at 24:25-25:6. Because PSMF No. 80

is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

81.

He brought: SWAT Addendum; packet of photos of Riley and the front, side and rear of 3741 Landau Lane; copy of the warrant; and briefing notes – he may have had the FD-888. (Doc. 87, Guerra Dep. 93:2-15)

**RESPONSE:** Undisputed, except, as previously stated, Guerra had a copy of the arrest warrant and the first page of the search warrant. *See* Defs.' Resp. to PSMF No. 10.

82.

He shared all of these docs with Assistant Team Leader Lemoine. (Doc. 87, Guerra Dep. 97:3-6).

**RESPONSE:** Undisputed.

83.

On the morning of the raid, Guerra showed Lemoine a "package" which should have included the baseball cards that have background information on the target of a warrant. (Doc. 91, Lemoine Dep. 41:24–42:2, 43:21-44:6).

**RESPONSE:** Undisputed.

84.

Agents typically review any search or arrest warrants prior to the warrant's execution. (Doc. 91, Lemoine Dep. 43:18–20).

**RESPONSE:** Defendants object to PSMF No. 84 on the grounds that it mischaracterizes Lemoine's testimony and is not material. Lemoine testified that he typically would review a warrant before executing it. Lemoine Dep. (Doc. 91), at 43:18-20; *see also* Defs.' Resp. to PSMF No. 10. Because PSMF No. 84 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

85.

Lemoine only recalls seeing a single picture of the target house prior to executing the warrant. (Doc. 91, Lemoine Dep. 44:14–18).

**RESPONSE:** Defendants object to PSMF No. 85 on the ground that it is not material. Because PSMF No. 85 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

86.

Guerra did not share the warrants with Lemoine and only verbally presented that information. (Doc. 87, Guerra Dep. 97:7-18).

**RESPONSE:** Defendants object to PSMF No. 86 on the grounds that it is not material and to the extent it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF No. 10. Guerra testified:

> I don't recall sharing the warrants with him. It would have been more on the photos, all – about the warrants, I shared that with everybody verbally, what we were there to do, the reason we were

> there, to execute the search and warrant on that property, 3741, and the arrest warrant for Mr. Riley – but physically produce those to him, and I didn't have the attachments with me.

Guerra Dep. (Doc. 87), at 97:12-19. Because PSMF No. 86 is not material, and to the extent PSMF No. 86 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

87.

Guerra did not bring the attachments to the warrants; he only had the "front copy" of the warrant and claims he did not need entire warrant because he was not doing a search of the home, just a search for "humans." (Doc. 87, Guerra Dep. 97:19, 98:5-7, 98:25-99:9).

**RESPONSE:** Defendants object to PSMF No. 87 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 10. Because PSMF No. 87 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

88.

Guerra was responsible for determining when the SWAT team arrived at the target home, 3741 Landau Lane, on October 18, 2017. (Doc. 91, Lemoine Dep. 31:21–32:3).

**RESPONSE:** Defendants object to PSMF No. 88 on the grounds that it mischaracterizes Lemoine's testimony and to the extent it purports to state a legal conclusion. *See* Defs.' Resp. to PSMF No. 7. That the warrant execution

was scheduled to commence at 5:00 a.m., simultaneously with the execution of the numerous other warrants, was decided prior to October 18, 2017, as set forth in the Operations Order. Crum Decl. (Doc. 83-6), Ex. 4 (p.17). When asked who decided where the caravan of vehicles would stop and the house that would be entered, Lemoine testified, "I don't remember specifically. I'd say Larry Guerra." Lemoine Dep. (Doc. 91), at 31:21-32:3. But Lemoine also testified about reviewing the package of information on 3741 Landau, being briefed on the target location, and participating in the drive-by of 3741 Landau on the morning of the warrant executions. *Id.* at 41:24–42:2, 43:21-45:20, 49:23-50:7. Because PSMF No. 88 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

89.

Guerra briefed the SWAT team at 4:00 am. (Doc. 87, Guerra Dep. 52:4-6, 111:2-4).

**RESPONSE:** Defendants do not dispute that Guerra briefed the SWAT team at the staging area, but his testimony is that he briefed the SWAT team on the tactical portions of the operation between 4:00 a.m. and 4:30 a.m. after they had arrived at 4:00 a.m. Guerra Dep., at 110:12-111:19. Subject to the foregoing

clarification of the record, the Court properly may consider PSMF No. 89 for purposes of Defendants' Motion for Summary Judgment.

90.

Guerra briefed everyone on Silver team at 4:30 am. (Doc. 87, Guerra Dep. 112:5-12).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 51.

91.

Guerra does not have specific recollection of everything he told the agents and officers in the briefing – his declaration is based on what he "would have" done. (Doc. 87, Guerra Dep. 116:1-25, 117:12-22; Ex. 3, ¶¶ 38, 39).

**RESPONSE:** Defendants object to PSMF No. 91 on the grounds that it is not material and mischaracterizes his testimony. Guerra and Thompson both testified that the agents and other personnel participating in the warrant executions were shown photographs of Riley and 3741 Landau and were briefed on the case, the tactical plan, Riley and 3741 Landau, and the black Camaro. Guerra Dep. (Doc. 87), at 110:22-112:23, 116:12-117:22, 207:19-23, 237:4-7; Thompson Dep. (Doc. 88), at 66:21-67:12, 71:22-74:1; *see also* Burke Dep. (Doc. 93), at 28:7-30:10; Dye Dep (Doc. 94), at 45:11-46:15, 48:16-50:10; Fehmel Dep. (Doc. 95), at 9:19-10:21, 42:19-45:2. Because PSMF No. 91 is not material and

mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

92.

Guerra verbally explained that the team was to execute a search warrant on the property at 3741 Landau Lane and serve the arrest warrant for Mr. Riley. (Doc. 87, Guerra Dep. 97:15-18).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 51.

93.

The pre-raid briefing lasted "at least 5 minutes." (Doc. 87, Guerra Dep. 118:2-3).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 51.

94.

Guerra orally presented the OPORDER, FD-888, to all personnel executing the warrant at 3741 Landau Lane – but did not provide hard copies. (Doc. 87, Guerra Dep. 36:6-37:9).

**RESPONSE:** Defendants object to PSMF No. 94 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 91. Because PSMF No. 94 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

95.

Guerra orally presented the SWAT Addendum PowerPoint to all personnel executing the warrant at 3741 Landau Lane – but did not provide hard

copies or a copy of the map in the PowerPoint. (Doc. 87, Guerra Dep. 36:14–16, 37:10-37:16, 117:9-11, 160:2-8; Ex. 6, Doc 87 at 97).

**RESPONSE:** Defendants object to PSMF No. 95 on the grounds that it mischaracterizes Guerra's testimony and is not material. *See* Defs.' Resp. to PSMF No. 91. Because PSMF No. 95 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

96.

Guerra passed around his photo packet to the team; the photos in Exhibit 4 is what he shared with the agents. (Doc. 87, Guerra Dep. 117:3-8, 156:17-25; Doc. 87 at 83, Guerra Dep. Ex. 4, Doc. 87 at 83–85).

**RESPONSE:** Defendants do not dispute that Guerra showed the photographs in Guerra Dep., Ex. 4, to the personnel at the staging area but otherwise object to PSMF No. 96 to the extent it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF No. 91; *also*, *e.g.*, Lemoine Dep. 41:24–42:2, 43:21-44:6. Subject to the foregoing objection, the Court properly may consider PSMF No. 96 for purposes of Defendants' Motion for Summary Judgment.

97.

Guerra orally told all members of Silver Team the correct address. (Doc. 87, Guerra Dep. 218:24-219:22).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 51.

98.

Guerra told APD the address of the target house, 3741 Landau Lane, but does not know what they did with that information, i.e., regarding the house alarm. (Doc. 87, Guerra Dep. 128:10-15, 207:19-23).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 51.

99.

Guerra told APD to turn on their blue lights when they heard them knock-announce or when they heard the flashbangs. (Doc. 87, Guerra Dep. 132:16-132:1).

**RESPONSE:** Defendants object to PSMF No. 99 on the grounds that it is not material and mischaracterizes Guerra's testimony. Guerra instructed the Atlanta Police Department units to turn on their blue lights when they heard the SWAT team knocking and announcing but, if they could not hear the knock-and-announce, then to turn the blue lights on "on the flashbang." Guerra Dep. (Doc. 87), at 131:19-132:1. Because PSMF No. 99 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Pre-raid drive-by"**

100.

On the morning of the warrant execution, Agent Lemoine and Guerra testified that they conducted a drive-by of the target of the warrant at approximately 3:45 a.m.; it was completely dark outside. (Doc. 87, Guerra Dep.

107:6-12; Doc. 91, Lemoine Dep. 44:19–45:12).

**RESPONSE:** Undisputed. Defs.' Statement ¶¶ 38, 41-42.

101.

Prior to leaving the staging area for the drive-by, Guerra claimed that he entered 3741 Landau Lane into his Garmin GPS. (Doc. 87, Guerra Dep. 100:4-14).

**RESPONSE:** Undisputed. Defs.' Statement ¶¶ 39-40. Lemoine also testified that Guerra used his Garmin GPS unit to navigate to 3741 Landau. Lemoine Dep. (Doc. 91), at 48:4-20. Additionally, while Donovan was not present for the drive-by, he also testified that Guerra would use his Garmin GPS unit for navigational purposes. Donovan Dep., at 29:3-30:16.

102.

The Garmin unit was a personal device, not issued by FBI. (Doc. 87, Guerra Dep. 100:15-17).

**RESPONSE:** Defendants object to PSMF No. 102 on the ground that it is not material. There is no FBI policy or standard operating procedure regarding how to locate or navigate to a target, whether to use a GPS device, or what type of GPS may be used. Pettry Dep. (Doc. 96), at 32:11-38:11, 50:19-51:20; Guerra Dep. (Doc. 87), at 25:1-26:13, 100:18-101:1; Donovan Dep. (Doc. 92), at 27:3-28:6, 57:11-18; Lemoine Dep. (Doc. 91), at 48:4-24. Because PSMF No. 102 is not

material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

103.

The GPS unit's display had a checkered flag would appear on the map showing the destination, showing him whether on the right or left. (Doc. 87, Guerra Dep. 104:6-10, 104:19-23, 234:18-24).

**RESPONSE:** Defendants object to PSMF No. 103 on the ground that it is not material. Because PSMF No. 103 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

104.

Guerra had the map on the SWAT addendum in addition to his GPS, but did not use the map. (Doc. 87, Guerra Dep. 110:12-13).

**RESPONSE:** Defendants object to PSMF No. 104 on the ground that it is not supported by the cited evidence. Guerra was asked whether, in addition to having the map on his GPS and the map on the SWAT Addendum, he ever separately mapped out the location and printed it out from his computer, and he testified that he did not but he had the copy of the directions that were provided in the SWAT Addendum. Guerra Dep. (Doc. 87), at 110:10-17. Because PSMF No. 104 is not supported by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

105.

Guerra claims the flag showed the destination on the right side of the street. (Doc. 87, Guerra Dep. 234:25-235:12).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 43.

106.

It would have taken Guerra less than 60 seconds to verify whether the flag was on the left or right side of the street. (Doc. 87, Guerra Dep. 235:13-18).

**RESPONSE:** Defendants object to PSMF on the ground that it is not material. *See* Defs.' Statement ¶ 43; Defs.' Resp. to PSMF No. 7. Furthermore, both Guerra and Lemoine testified about the importance of doing a "quick drive-by without stopping" so as not to tip off Riley or any acquaintances. Guerra Dep. (Doc. 87), at 157:18-158:3; *see* Lemoine Dep. (Doc. 91), at 46:10-19. Because PSMF No. 106 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

107.

Guerra "believes" he set the Garmin to verbal instructions as well, so it would verbally say to turn left, right, you are here. (Doc. 87, Guerra Dep. 101:21-102:3, 104:19-23).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 43.

108.

Guerra does not recall if the device would verbally alert him that his

destination was on the right or left. (Doc. 87, Guerra Dep. 104:3-18).

**RESPONSE:** Defendants object to PSMF No. 108 on the ground that it is not material. Because PSMF No. 108 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

109.

When the Garmin alerted him, he was not at the same place where he did his site survey two days earlier. (Doc. 87, Guerra Dep. 105:24-1-6:4).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 46.

110.

Lemoine does not recall the GPS unit alerting that they had arrived at the target address. (Doc. 91, Lemoine Dep. 49:5–7).

**RESPONSE:** Defendants object to PSMF No. 110 on the ground that it is not material and to the extent it mischaracterizes Lemoine's testimony. Lemoine testified that Guerra used his GPS unit to locate 3741 Landau but could not specifically recall whether or not it alerted once they arrived at the destination. Lemoine Dep. (Doc. 91), at 48:4-49:7. Because PSMF No. 110 is not material, and to the extent PSMF No. 110 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

111.

Guerra did a drive-by because it was a few days since his site survey, it is now nighttime/dark outside versus daylight during survey, and to look for any vehicles or indications that people may be awake. (Doc. 87, Guerra Dep. 95:8-16).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 38.

112.

When Agent Lemoine participated in the site survey on the morning of the warrant execution, his purpose was only to plan the execution of the warrant; it was not to identify the target location. (Doc. 91, Lemoine Dep. 46:20–23).

**RESPONSE:** Defendants object to PSMF No. 112 on the grounds that it is not material and mischaracterizes Lemoine's testimony. Lemoine testified that, at the time of the drive-by, the target location already had been identified, as reflected in the package of materials that he already had been provided and the presentation he would have seen. Lemoine Dep. (Doc. 91), at 40:25-41:13, 44:19. That the target location already had been identified did not put blinders on Lemoine as to whether the home appeared to be 3741 Landau; to the contrary, his observations during the drive-by took the elements of that home, such as the tight stairway and stoop, into account. *Id.* at 45:13-46:19. Because PSMF No. 112 is not material and mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

113.

Lemoine's understanding was that, at the time of the pre-execution site survey, Guerra had already identified the target location. (Doc. 91, Lemoine Dep. 46:20–47:1).

**RESPONSE:** Defendants object to PSMF No. 113 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 112. Lemoine also testified that Guerra used his GPS unit to locate 3741 Landau. Lemoine Dep. (Doc. 91), at 48:4-6. Because PSMF No. 113 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

114.

During the morning site survey, Guerra and Lemoine noticed a black Camaro in the driveway of the home. (Doc. 91, Lemoine Dep. 66:7–24).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 45.

115.

Lemoine asked Guerra whether the black Camaro had been present at the location during previous site visits, and Guerra said no. (Doc. 91, Lemoine Dep. 66:7–24).

**RESPONSE:** Defendants object to PSMF No. 115 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 47. Because PSMF No. 115 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

116.

Lemoine had no information that a black Camaro was associated with any of the targets of the warrant execution. (Doc. 91, Lemoine Dep. 66:25–67:3).

**RESPONSE:** Defendants object to PSMF No. 116 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 47. Because PSMF No. 116 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

117.

Guerra only drove by the house one time during the pre-raid drive-by. (Doc. 87, Guerra Dep. 106:13-17).

**RESPONSE:** Undisputed. *See* Defs.' Resp. to PSMF No. 106.

118.

Based on his drive-by, Guerra used two indicators to find the target: "a very large tree in that corner, and …a black Camaro in the driveway." (Doc. 87, Guerra Dep. 95:21-24, 109:17-110:1, 237:5-7).

**RESPONSE:** Defendants object to PSMF No. 118 on the ground that it mischaracterizes Guerra's testimony. For his drive-by, Guerra relied on his GPS, his prior site survey (including all of the characteristics and indicators of 3741 Landau he had taken note of), the photographs of the property, and the information contained in the SWAT Addendum and any other information that would have been in his memory. Guerra Dep. (Doc. 87), at 109:17-110:13. For the

actual warrant executions, Guerra also used the additional indicator of the black Camaro that he had observed during the drive-by. *Id.* at 237:5-7. Guerra testified that the circumstances that led him to believe Plaintiffs' home was 3741 Landau during the drive-by and then use the black Camaro as an additional indicator led him to the wrong home for the actual warrant execution. *Id.* at 237:8-238:6. Because PSMF No. 118 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

119.

Despite having Agent Lemoine present with him, Guerra failed to note the plate of the Camaro. (Doc. 87, Guerra Dep. 236:24–25).

**RESPONSE:** Defendants object to PSMF No. 119 on the grounds that it is not supported by the cited evidence, is not material, and purports to state a legal conclusion. *See* Defs. Resp. to PSMF Nos. 7 & 47. Guerra did not testify that he *failed* to note the license plate of the Camaro; instead, he testified that he only drove by the front of the house so as not to tip off Riley and did not note the license plate, which was in the side driveway and out of his view (and possibly unreadable in the dark anyway). Guerra Dep. (Doc. 87), at 157:18-158:3, 236:24-237:7. Because PSMF No. 119 is not supported by the record, is not material, and

purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

120.

Despite having multiple APD units on site in support, Guerra failed to ask anyone to run the Camaro's plate. (Doc. 87, Guerra Dep. 117:1–2).

**RESPONSE:** Defendants object to PSMF No. 120 on the grounds that it is not supported by the cited evidence, is not material, purports to state a legal conclusion. *See* Defs.' Resp. to PSMF Nos. 7, 47, & 119. Guerra never testified that he *failed* to ask anyone to run the Camaro's plate; instead, the cited evidence merely shows that Atlanta Police Department officers were present for the briefing at the staging area. Because PSMF No. 120 is not supported by the record, is not material, and purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

121.

The Camaro was registered to Plaintiffs' address. Cliatt Decl. ¶ 2.

**RESPONSE:** Defendants object to PSMF No. 121 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 47 & 119. Because PSMF No. 121 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

122.

The target was not known to operate a black Camaro or associate with anyone who did. (Doc. 89 at 13, Bazzell Dep. Ex. 39).

**RESPONSE:** Defendants object to PSMF No. 122 on the ground that it is not material. *See* Defs.' Resp. to PSMF No. 47. Because PSMF No. 122 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

123.

The silver Nissan Maxima was parked outside of the target's home at the time of the raid. *See* Doc. 70; Doc. 69-15 ¶ 2(e), AXON_Body_2_Video_2017-10-18_0508.mp4 at 0:13–0:17.

**RESPONSE:** Defendants object to PSMF No. 123 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 47 and 118. Because PSMF No. 123 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

124.

Despite it being completely dark out and dimming his lights, Guerra claims he could observe several details of Plaintiffs' home: the street sign for Landau Lane, the property was located on a corner, a large tree in yard, side garage, the house was tan in color, two story house, stoop in front of the house and four windows to the right of the stoop. (Doc. 87, Guerra Dep. 107:21-108:11).

**RESPONSE:** Undisputed. Defs.' Statement ¶¶ 41-44, 46.

**"Reasons to doubt any pre-raid drive-by took place"**[8]

125.

There is no objective evidence showing that Guerra attempted the preraid drive-by when there should be corroborating evidence. Guerra claims that he went to the site with Agent Lemoine. (Doc. 91, Lemoine Dep. 52:20–23).

**RESPONSE:** Defendants object to PSMF No. 125 on the ground that it is not supported by the cited evidence. Not only did Lemoine and Guerra both testify that they conducted the attempted drive-by, but their testimony is supported by the available GPS data. *See* Lemoine Dep. (Doc. 91), at 40:19-42:2, 44:19-49:15, 52:20-23; Guerra Dep. (Doc. 87), at 94:6-96:12; Doc. 83-6, Ex. 6. First, the GPS data shows that Lemoine arrived at the staging area at approximately 3:26 a.m., which is before any of the other SWAT team members arrived and thirty (30) minutes before the SWAT team members were instructed to arrive. *Compare* Doc. 83-6, Ex. 6 (p.52), *with* Guerra Dep., Ex. 15; Doc. 83-6, Ex. 6 (pp. 55, 59, 61, 65, 68, 71, 74, 77).[9] Second, Lemoine's GPS data shows that he left the

---

[8] Defendants specifically object to this header on the grounds it is not supported by the cited evidence that follows, is not material, and purports to state an issue or legal conclusion.

[9] For the other individuals for whom GPS data is available, the data shows that their approximate arrival times at the staging area were 3:34 a.m. (Brosas), 3:38 a.m. (Carman), 3:47 a.m. (Bower), 3:49 a.m. (Harvey), 3:50 a.m. (Evans), between

staging area between 3:31 a.m. and 3:42 a.m. (and, alternatively, shows no data between 3:43 a.m. and 4:48 a.m.), which would have been enough time for he and Guerra to complete the four-to-six minute, round-trip from the staging area (depending on the time of day) to conduct the "less than a minute" drive-by at the home they believed was 3741 Landau. *See* Doc. 83-6, Ex. 6 (p.52); Lemoine Dep. (Doc. 91), at 47:11-14; https://www.google.com/maps/dir/2055+Fairburn+Rd+SW,+Atlanta,+GA+30331/3756+Denville+Trace+Southwest,+Atlanta,+GA (accessed on Sept. 28, 2021). Because PSMF No. 125 is not supported by the record and in fact is contradicted by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

126.

There is cell phone GPS data for Agent Lemoine for this time period. *See* Ex. C, Lemoine GPS Map; Ex. D, Lemoine GPS Data.

**RESPONSE:** Undisputed. *See* Defs.' Resp. to PSMF No. 125.

---

3:54 a.m. and 4:04 a.m. (Dye), 4:02 a.m. (Johnson), and 4:10 a.m. (Riddle). Doc. 83-6, Ex. 6 (pp. 55, 59, 61, 65, 68, 71, 74, 77).

127.

But this GPS data shows that Agent Lemoine did not go to the site of the warrant execution (or Plaintiffs' home) prior to the warrant execution. *See* Ex. C, Lemoine GPS Map; Ex. D, Lemoine GPS Data.

**RESPONSE:** Defendants object to PSMF No. 127 on the ground that it is not supported by the cited evidence. *See* Defs.' Resp. to PSMF No. 125. Because PSMF No. 127 is not supported by the record and in fact is contradicted by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

128.

Agent Lemoine testified that he would have had his FBI cell phone with him, Doc. 91, Lemoine Dep. 45:10–12, so that the GPS data should accurately reflect his movements at that time.

**RESPONSE:** Defendants object to PSMF No. 128 on the ground that it is not supported by the cited evidence. *See* Defs.' Resp. to PSMF Nos. 50 & 125. Because PSMF No. 128 is not supported by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Differences between the houses"**[10]

129.

A side by side comparison, *see generally* Doc. 87, Ex. 19, Doc. 87 at 201, of 3741 Landau Lane and the Plaintiffs' home shows the following differences:

A. The home on the top of Exhibit 19 is the Landau Lane house. The home at the bottom is Plaintiffs' home. (Doc. 87, Guerra Dep. 208:8-16; Ex. 19).

B. Denville Trace has stone work around the façade of the door and Landau Lane does not. (Doc. 87, Guerra Dep. 208:17-25).

C. The Denville Trace stairs to front door are taller than Landau Lane. (Doc. 87, Guerra Dep. 209:1-9).

D. But agrees no shrubbery in front of Denville Trace stairwell like at Landau Lane. (Doc. 87, Guerra Dep. 210:17-22).

E. Landau Lane has dormers on the roof that are not present on Denville Trace. (Doc. 87, Guerra Dep. 209:12-17).

F. Landau Lane has square shaped shrubbery while Denville Trace is round shrubbery. (Doc. 87, Guerra Dep. 210:2-5).

G. Landau Lane shrubbery is much larger than Denville Trace. (Doc. 87, Guerra Dep. 210:6-9).

H. Landau Lane home is closer to white while Denville Trace is closer to light brown in color. (Doc. 87, Guerra Dep. 210:10-15).

[10] Defendants specifically object to this header on the grounds it is not supported by the cited evidence that follows, is not material, and purports to state an issue or legal conclusion.

I. Majority of windows at Landau Lane are single wide, while at Denville Trace, most are double or triple wide. (Doc. 87, Guerra Dep. 211:3-7).

J. All windows at Landau Lane have faux shutters; Denville Trace does not. (Doc. 87, Guerra Dep. 212:8-21).

**RESPONSE:** Defendants object to PSMF No. 129 on the grounds that it is not material, is not supported by the cited evidence, and Exhibit 19 to Guerra's deposition is not admissible because it does not purport to show 3741 Landau at the time of the warrant executions at issue. *Compare* Guerra's Dep. (Doc. 87), Ex. 19, *with id.*, Exs. 4 & 9; *see also* Defs.' Resp. to PSMF Nos. 7 & 30; *e.g.*, *Garczynski*, 573 F.3d at 1167 ("Because an officer's perspective in the field differs from that of a judge sitting peacefully in chambers, we must resist the temptation to judge an officer's actions with the 20/20 vision of hindsight.") (citation omitted). Because PSMF No. 129 is not material, is not supported by the record, and relies on inadmissible evidence, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

130.

Guerra confirmed that the map where red mark located is 3741 Landau Lane and aqua "X" is the Denville Trace home. (Doc. 87, Guerra Dep. 165:3-9; Ex. 6 at 11).

**RESPONSE:** Defendants object to PSMF No. 130 on the ground that it is not material. *See* Defs.' Resp. to PSMF Nos. 7 and 30. Because PSMF No. 130 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Similarities between many homes"**[11]

131.

Guerra Guerra [sic] highlighted a number of supposedly unique commonalities that the target home shared with Plaintiffs' home, see Doc. 69-17 ¶ 32; however, each of these features is shared by a large number of homes within the planned subdivision:

**RESPONSE:** Defendants do not dispute that Guerra identified a number of specific features during his site survey that, based on his experience, would be helpful to the SWAT team entry and allow him to identify the property in the early morning of the warrant executions. Defs.' Statement No. 31. Defendants object to the remainder of PSMF No. 131 on the grounds it is not supported by the record evidence and does not comply with the provision of Local Rule 56.1(B)(1). Because the remainder of PSMF No. 131 is argumentative and not

[11] Defendants specifically object to this header on the grounds it is not supported by the cited evidence that follows, is not material, and purports to state an issue or legal conclusion.

supported by the record (or any evidence whatsoever), the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

132.

Of the 16 homes on Landau Lane from the entrance to the target home, at least 10 are primarily beige in color. *See* Exhibit B, Google Maps 3D "Globe view" screenshots. Additionally, these homes may be viewed at https://www.google.com/maps by selecting the satellite layer and enabling the "Globe view" function (under "More") and clicking the 3D button.

**RESPONSE:** Defendants object to PSMF No. 132 on the grounds that it is not supported by the cited evidence, the cited evidence is inadmissible insofar as it does not appear to be based on realistic imagery that accurately depicts the neighborhood during the relevant time period but instead is based on digital or computerized graphics of the neighborhood in 2021, and is not material. *See* Defs.' Resp. to PSMF Nos. 27 & 30. Of the *15* homes on Landau Lane from the entrance of the subdivision to 3741 Landau:

- Only three or four homes appear to be beige or a similar shade, as opposed to white, red, or grey;
- Only five homes, one of which is red, are on corner lots;
- Only Plaintiffs' home and 3741 Landau are on corner lots and have a large tree in the corner of the property to the right of the front door;

- Only Plaintiffs' home and 3741 Landau are on corner lots and have a driveway on a separate street to the right of the front door;
- Only Plaintiffs' home and 3741 Landau are on corner lots and appear to have a stairway and stoop leading to the front door; and
- Only Plaintiffs' home and 3741 Landau are on corner lots and appear on the driver's right immediately following a left curve or turn.

Martin Dep. (Doc. 86), Ex. 1; Guerra Dep. (Doc. 87), Exs. 4 & 6; Thompson Dep. (Doc. 88), Ex. 27; Plfs.' Resp. to Defs.' Request for Admission (Doc. 83-11), at 8 (Nos. 19 & 20); Doc. 101-4. Because PSMF No. 132 is not supported by the record, is not material, and relies on inadmissible evidence that lacks reliability and for which no foundation has been laid, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

133.

Of the 16 homes on Landau Lane from the entrance to the target home, at least 9 are split level (marked by stairs up to the front door). *See* Exhibit B, Google Maps 3D "Globe view" screenshots. Additionally, these homes may be viewed at https://www.google.com/maps by selecting the satellite layer and enabling the "Globe view" function (under "More") and clicking the 3D button.

**RESPONSE:** Defendants object to PSMF No. 133 on the grounds that it is not supported by the cited evidence, the cited evidence is inadmissible insofar as it does not appear to be based on realistic imagery that accurately depicts the

neighborhood during the relevant time period but instead is based on digital or computerized graphics of the neighborhood in 2021, and is not material. *See* Defs.' Resp. to PSMF Nos. 27, 30, and 132. Because PSMF No. 133 is not supported by the record, is not material, and relies on inadmissible evidence that lacks reliability and for which no foundation has been laid, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

134.

Of the 16 homes on Landau Lane from the entrance to the target home, at least 9 are located on a corner lot. *See* Exhibit B, Google Maps 3D "Globe view" screenshots. Additionally, these homes may be viewed at https://www.google.com/maps by selecting the satellite layer and enabling the "Globe view" function (under "More") and clicking the 3D button.

**RESPONSE:** Defendants object to PSMF No. 134 on the grounds that it is not supported by the cited evidence, the cited evidence is inadmissible insofar as it does not appear to be based on realistic imagery that accurately depicts the neighborhood during the relevant time period but instead is based on digital or computerized graphics of the neighborhood in 2021, and is not material. *See* Defs.' Resp. to PSMF Nos. 27, 30, & 132. In fact, it appears that only seven houses in the entire neighborhood are located on corner lots. *See* Plfs.' Ex. B. Because PSMF No. 134 is not supported by the record (and in fact contradicts Plaintiffs' cited evidence), is not material, and relies on inadmissible evidence that lacks

reliability and for which no foundation has been laid, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

135.

Of the 16 homes on Landau Lane from the entrance to the target home, at least 5 had a driveway/garage on a separate street that ran perpendicular to the front door. *See* Exhibit B, Google Maps 3D "Globe view" screenshots. Additionally, these homes may be viewed at https://www.google.com/maps by selecting the satellite layer and enabling the "Globe view" function (under "More") and clicking the 3D button.

**RESPONSE:** Defendants object to PSMF No. 135 on the grounds that it is not supported by the cited evidence, the cited evidence is inadmissible insofar as it does not appear to be based on realistic imagery that accurately depicts the neighborhood during the relevant time period but instead is based on digital or computerized graphics of the neighborhood in 2021, and is not material. *See* Defs.' Resp. to PSMF Nos. 27, 30, & 132. Because PSMF No. 135 is not supported by the record, is not material, and relies on inadmissible evidence that lacks reliability and for which no foundation has been laid, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

136.

Of the 16 homes on Landau Lane from the entrance to the target home, at least 11 had a large tree in the front corner of the property. *See* Exhibit B, Google Maps 3D "Globe view" screenshots. Additionally, these homes may be viewed at

https://www.google.com/maps by selecting the satellite layer and enabling the "Globe view" function (under "More") and clicking the 3D button.

**RESPONSE:** Defendants object to PSMF No. 136 on the grounds that it is not supported by the cited evidence, the cited evidence is inadmissible insofar as it does not appear to be based on realistic imagery that accurately depicts the neighborhood during the relevant time period but instead is based on digital or computerized graphics of the neighborhood in 2021, and is not material. *See* Defs.' Resp. to PSMF Nos. 27, 30, & 132. Because PSMF No. 136 is not supported by the record, is not material, and relies on inadmissible evidence that lacks reliability and for which no foundation has been laid, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

137.

The target house and the house immediately across Landau Lane from the target house are mirror images of each other, and look much more similar to each other than the target house looks in comparison to Plaintiffs' home. *See* Exhibit B, Google Maps 3D "Globe view" screenshots. Additionally, these homes may be viewed at https://www.google.com/maps by selecting the satellite layer and enabling the "Globe view" function (under "More") and clicking the 3D button.

**RESPONSE:** Defendants object to PSMF No. 137 on the grounds that it is not supported by the cited evidence, the cited evidence is inadmissible insofar as it does not appear to be based on realistic imagery that accurately depicts the neighborhood during the relevant time period but instead is based on digital or

computerized graphics of the neighborhood in 2021, and is not material. *See* Defs.' Resp. to PSMF Nos. 27, 30, & 132. The home immediately across from the front door of 3741 Landau is red, and the home immediately across from the driveway of 3741 Landau is grey. Plfs.' Ex. B, at 3.[12] Because PSMF No. 137 is not supported by the record (and in fact contradicts Plaintiffs' cited evidence), is not material, and relies on inadmissible evidence that lacks reliability and for which no foundation has been laid, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

138.

But Guerra testified it would not be reasonable to confuse the two houses on the north side of the intersection of Landau Lane and Cranford Drive/Winfield Court. (Doc. 87, Guerra Dep. 241:17–243:16).

**RESPONSE:** Defendants object to PSMF No. 138 on the grounds that it is not material, is not supported by the cited evidence insofar as the cited evidence is inadmissible because it is not based on realistic imagery that accurately depicts the neighborhood during the relevant time period but instead is based on digital or computerized graphics of the neighborhood in 2021, and to the extent it

---

[12] *See* https://iaspublicaccess.fultoncountyga.gov/pictometry/pictometryipa.aspx?sIndex=0&idx=1&LMparent=20 (Dec. 2016 – Mar. 2017 & Dec. 2017 – Feb. 2018) (accessed Sept. 28, 2021).

purports to state a legal conclusion. *See* Defs.' Resp. to PSMF No. 132 & 137. Because PSMF No. 138 is not material, relies on inadmissible evidence, and purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Arrival of the SWAT team"**

139.

Lemoine rode in a silver van to the location of the warrant execution. (Doc. 91, Lemoine Dep. 23:8–10).

**RESPONSE:** Undisputed.

140.

Guerra informed team that they were 10 seconds out over the FBI radio channel. (Doc. 87, Guerra Dep. 129:12-15).

**RESPONSE:** Undisputed.

141.

Guerra did not ask or confirm with any other officer or agent prior to entering the home that they were at the correct address. (Doc. 87, Guerra Dep. 233:22-25).

**RESPONSE:** Defendants object to PSMF No. 141 on the ground that it is not material and to the extent it mischaracterizes the cited evidence. The agents and other personnel participating in the warrant executions were shown photographs of 3741 Landau and briefed on 3741 Landau. Guerra Dep. (Doc. 87),

at 110:22-112:23, 116:12-117:22, 207:19-23, 237:4-7; Thompson Dep. (Doc. 88), at 66:21-67:12, 71:22-74:1; *see also* Burke Dep. (Doc. 93), at 28:7-30:10; Dye Dep. (Doc. 94), at 45:11-46:15, 48:16-50:10; Fehmel Dep. (Doc. 95), at 9:19-10:21, 42:19-45:2. Thompson himself had conducted more than two hours of surveillance at 3741 Landau on October 3, 2017. Thompson Dep. (Doc. 88), at 40:13-19, 44:6-9, 47:20-48:5, & Exs. 26 & 27. They implicitly or constructively confirmed to Guerra that he was at the correct location by not asserting any belief that they were not at 3741 Landau. *See* Pettry Dep. (Doc. 96), at 69:20-71:4 & Ex. 24 (showing that none of the other agents and personnel realized they were not at 3741 Landau either). Because PSMF No. 141 is not material, and to the extent PSMF No. 141 is not supported by the record (and in fact contradicts the record), the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Execution of the warrant"**

142.

Members of the SWAT team wore full tactical gear during the warrant execution, including a *green ballistic helmet, protective headphones or "earmuffs," protective lenses, multicam shirt of beige and green with matching ballistic vest that has "FBI" on front and back, belt with sidearm, and matching pants, extra ammunition. (Doc. 87, Guerra Dep. 119:2-25, 120:1–3).

**RESPONSE:** Undisputed.

143.

Each member of the SWAT team carries a rifle as primary weapon and a holstered handgun. (Doc. 87, Guerra Dep. 121:4-10).

**RESPONSE:** Undisputed.

144.

The SWAT team had the following devices: a 40-lb ram or entry tool, prybar, and flashbangs. (Doc. 87, Guerra Dep. 121:20-122:5).

**RESPONSE:** Undisputed.

145.

Guerra made the decision to use flashbangs *prior* to getting to the house. (Doc. 87, Guerra Dep. 132:2-5).

**RESPONSE:** Defendants object to PSMF No. 145 on the ground that it mischaracterizes Guerra's testimony. Only one flashbang was used at Plaintiffs' home. Guerra Dep. (Doc. 87), at 136:12-137:13. Additionally, the SWAT Addendum provided that "Flash bangs may be deployed at the discretion of the team leader for Operator safety." *Id.*, Ex. 6. Lemoine also testified that "99% of the entries [the SWAT team] make[s] are with a flash-bang inside the residence," further testifying that "[i]f there's [a] possibility of an individual in there that could be hostile, we're gonna use a diversionary device." Lemoine Dep. (Doc. 91), at 26:19-27:7. Dye also testified that it's typical to discuss the deployment of a flashbang at the operational brief if one is going to be used. Dye Dep. (Doc. 94),

at 35:24-36:6. Because PSMF No. 145 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

146.

Guerra made the decision to deploy flashbangs right at the entrance of the home. (Doc. 87, Guerra Dep. 132:13-15).

**RESPONSE:** Defendants object to PSMF No. 146 on the ground that it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF No. 145. Because PSMF No. 146 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

147.

Flashbangs are held in a pouch on the vest, activated by removing a pin and it emits a loud sound and flash. (Doc. 87, Guerra Dep. 122:15-123:7).

**RESPONSE:** Undisputed.

148.

Guerra claims they "knocked and announced" for 20 seconds prior to ramming in the door of Plaintiffs' home; however, the videos from APD do not capture objective evidence of how long, or even if, there was a "knock and announce." (Doc. 87, Guerra Dep. 41:10-12, 43:12-19, 44:24-45:4; Doc. 83-15, exhibits 2(a)-(e).

**RESPONSE:** Defendants do not dispute that Guerra knocked and announced the presence of law enforcement and waited for a response before

directing the entry. Guerra Dep. (Doc. 87), at 133:23-136:11; *see also* Martin Dep. (Doc. 86), at 59:12-61:25; Cliatt Dep. (Doc. 85), at 121:14-17. Defendants object to the remainder of PSMF No. 148 on the grounds that it mischaracterizes the cited evidence and is not material. The first two minutes of each of the Atlanta Police Department body-worn camera videos is silent. *See* McGee Decl. (Doc. 83-15), Ex. 1. Because the remainder of PSMF No. 148 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

149.

Lemoine realized the SWAT team was at the wrong house when he saw a piece of mail inside the house which had a different address than the target of the warrants. (Doc. 91, Lemoine Dep. 30:25–31:20).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 68.

**"FBI policies / practices / training"**

150.

Agents have no discretion to execute a warrant at an address not listed on the warrant signed by the judge. (Doc. 87, Guerra Dep. 30:3-14; FBI 30(b)(6) Pettry Dep. 16–18).

**RESPONSE:** Defendants object to PSMF No. 150 on the grounds that it purports to state a legal conclusion and is not material. *See* Defs.' Resp. to PSMF No. 7; *also Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) (FTCA's

discretionary function exception barred claims arising from execution of warrant on wrong person); *Vivas v. United States*, No. 1:20-CV-02217-WMR, 2021 WL 2582300, at *4 (N.D. Ga. Apr. 21, 2021) (FTCA's discretionary function exception barred claims arising from execution of warrant at wrong apartment); *Figueroa v. United States*, No. 13-1290 (CVR), 2014 WL 6879316, at *1, *8-*9 (D.P.R. Dec. 4, 2014) (FTCA's discretionary function exception barred claims arising from execution of warrant at wrong apartment). Because PSMF No. 150 purports to state a legal conclusion and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

151.

The FBI "counsel[s] against" utilizing personal devices for collecting or documenting official work absent extraordinary circumstances. (FBI 30(b)(6) Dep. 28:15–23).

**RESPONSE:** Defendants object to PSMF No. 151 on the grounds that it is not material and to the extent it mischaracterizes the cited evidence. There is no FBI policy or standard operating procedure regarding how to locate or navigate to a target, whether to use a GPS device, or what type of GPS may be used. Pettry Dep. (Doc. 96), at 32:11-38:11, 50:19-51:20; Guerra Dep. (Doc. 87), at 25:1-26:13, 100:18-101:1; Donovan Dep. (Doc. 92), at 27:3-28:6, 57:11-18; Lemoine Dep. (Doc. 91), at 48:4-24. Because PSMF No. 151 is not material, and to the extent

PSMF No. 151 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

152.

When executing a search or arrest warrant, FBI agents do not have the discretion to enter an address that is not listed on the warrant unless they obtain consent or there are exigent circumstances. (Doc. 87, Guerra Dep 29:18–30:5).

**RESPONSE:** Defendants object to PSMF No. 152 on the grounds that it purports to state a legal conclusion and is not material. *See* Defs.' Resp. to PSMF Nos. 7 and 150. Because PSMF No. 152 purports to state a legal conclusion and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

153.

Every agent participating in a warrant execution should know the target's address. (Pettry Dep. 53:12–18).

**RESPONSE:** Defendants do not dispute that every agent participating in the warrant executions here knew the target address. Defendants nevertheless object to PSMF No. 153 to the extent it purports to state a legal conclusion or is contrary to applicable law. *See*, *e.g.*, *Shepard v. Hallandale Beach Police Dep't*, 398 F. App'x 480, 483 (11th Cir. 2010). Because PSMF No. 153 purports to state a legal

conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

154.

Every agent participating in a warrant execution should be shown a copy of the warrant. (Pettry Dep. 53:19–54:2).

**RESPONSE:** Defendants object to PSMF No. 154 on the grounds that it is not supported by the cited evidence, purports to state a legal conclusion, and is contrary to applicable law. *See* Defs.' Resp. to PSMF No. 10 (citing, *inter alia*, *Stinson*, 2006 WL 739525, at *12). Pettry testified that he personally would expect "those individuals effecting the – the law enforcement authority of the warrant would be provided it," but he did not know "whether it's a rule or not," and he would expect everyone else to learn their roles in the briefing. Pettry Dep. (Doc. 96), at 53:12-54:19. Because PSMF No. 154 is not supported by the record and purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

155.

"Agents are trained that there's a requirement that when you have a court order, that it pertains to a particular location or person in the particularity requirement. And as part of an operational briefing -- an operations briefing -- there is an expectation that they would be educated on where they were going." (Pettry Dep. 62).

**RESPONSE:** Defendants generally do not dispute PSMF No. 155 but object to PSMF No. 155 on the ground that it is not material and to the extent it purports to state a legal conclusion. Because PSMF No. 155 is not material, and to the extent PSMF No. 155 purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

156.

If an agent uses a personal device in furtherance of their official duties, the Department of Justice requires that, "if it becomes discoverable or is discoverable, it's important that it be preserved irrespective of where it's located." (Pettry Dep. 27:22–28:13).

**RESPONSE:** Defendants object to PSMF No. 156 on the grounds that it mischaracterizes the cited evidence and is not material and to the extent it purports to state a legal conclusion or lacks foundation. Pettry generally testified, on behalf of the FBI, that "if something becomes discoverable or is discoverable, it's important that it be preserved irrespective of where it's located" and whether something might become discoverable is based on the facts of the case. Pettry Dep. (Doc. 96), at 28:8-23; *see also* Defs.' Resp. to PSMF No. 55. Because PSMF No. 156 mischaracterizes the record, is not material, purports to state a legal conclusion, and lacks foundation, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

157.

FBI policy mandates that discoverable information be preserved. (Pettry Dep. 27:22–28:13).

**RESPONSE:** Defendants object to PSMF No. 157 on the grounds that it is not material and to the extent it purports to state a legal conclusion. *See* Defs.' Resp. to PSMF No. 156. Because PSMF No. 157 is not material and purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Guerra's Garmin GPS unit"**

158.

Defendant Guerra's excuse for going to the wrong home was that his personal Garmin-brand GPS unit told him to go to the wrong home. (Doc. 69-17 ¶ 43; Doc. 69-1 at 10, 23–24).

**RESPONSE:** Defendants object to PSMF No. 158 on the ground that it mischaracterizes Guerra's testimony. *See* Defs.' Resp. to PSMF No. 118. Because PSMF No. 158 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

159.

Guerra's Garmin unit had a small screen that would show a map. (Doc. 87, Guerra Dep. 101:17-20).

**RESPONSE:** Defendants object to PSMF No. 159 on the ground that it is not material. Because PSMF No. 159 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

160.

Guerra does not explain how the unit "alerted" him to the correct home, i.e. whether there was any visual cue that the home was on the right or left side of the street. (Doc. 87, Guerra Dep. 239:6–12).

**RESPONSE:** Defendants object to PSMF No. 160 on the ground that it mischaracterizes Guerra's testimony and is not material. Guerra testified his GPS unit would show a roadmap and he believed was set to give verbal and turn-by-turn instructions and would include a checkered flag but did not recall if it would give verbal instructions regarding which side of the street a house might be on. Guerra Dep. (Doc. 87), at 101:17-23, 104:3-10, 234:25-235:7. Because PSMF No. 160 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

161.

Guerra used his personal Garmin "often" for his FBI duties. (Doc. 87, Guerra Dep. 103:2-4).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 39.

162.

Guerra claims to not know the make and model of his Garmin. (Doc. 87, Guerra Dep. 101:11-13).

**RESPONSE:** Defendants object to PSMF No. 162 on the ground that it is not material. Because PSMF No. 162 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

163.

Guerra had to update the Garmin by plugging it into a computer, it did not update on its own via satellite – it was static, not dynamic; he only updated it once. (Doc. 87, Guerra Dep. 102:4-20, 104:24-105:8).

**RESPONSE:** Defendants object to PSMF No. 163 on the ground that it is not material and to the extent it is not supported by the cited evidence. Because PSMF No. 163 is not material, and to the extent PSMF No. 163 is not supported by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

164.

Guerra stopped using his Garmin unit after the incident. (Doc. 87, Guerra Dep. 53:21-54:15; Ex. 3, ¶¶ 10-14, 19).

**RESPONSE:** Undisputed.

165.

Guerra threw the Garmin away "not long after the incident occurred and I made the error." (Doc. 87, Guerra Dep. 102:5-13, 103:5-13).

**RESPONSE:** Undisputed.

166.

Guerra does not recall it ever taking him to the wrong address in the past. (Doc. 87, Guerra Dep. 103:14-16).

**RESPONSE:** Undisputed.

167.

Guerra did not run any tests for accuracy on the device. (Doc. 87, Guerra Dep. 103:17-20).

**RESPONSE:** Defendants object to PSMF No. 167 on the grounds that it is not material and is not supported by the cited evidence. Guerra testified that he regularly used his Garmin device for navigation purposes and it was accurate when he used it, with the sole exception being for the drive-by on the morning of the warrant executions here. Guerra Dep. (Doc. 87), at 103:14-20. Because PSMF No. 167 is not material and is not supported by the record (and in fact is contradicted by the record), the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

168.

Guerra did not pull any logs from his personal Garmin device after October 18, 2017; no one at the agency asked him to pull these logs either. (Doc. 87, Guerra Dep. 103:21-104:2).

**RESPONSE:** Defendants object to PSMF No. 168 on the ground that it is not material. Because PSMF No. 168 is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

**"Guerra's knowledge of impending litigation"**[13]

169.

Post incident Guerra went back to the house and gave Plaintiffs the number for the "chief division counsel who handles these matters." (Doc. 87, Guerra Dep. 146:36-11).

**RESPONSE:** Undisputed. *See* Defs.' Statement ¶ 74.

170.

Guerra wrote a report in the immediate aftermath so that "if someday there was more information that I -- I needed to testify to, that [report i]s for me to look at and recall." (Doc. 87, Guerra Dep. 147:10–14).

**RESPONSE:** Defendants object to PSMF No. 170 on the grounds that it mischaracterizes Guerra's testimony and is not material. Guerra testified that he did not realize at the time he wrote his report that there might be a lawsuit but wanted to have documentation in case Plaintiffs were looking to get reimbursed for the property damage. Guerra Dep. (Doc. 87), at 148:3-10, 204:2-8, 245:7-246:4.

---

[13] Defendants also specifically object to the foregoing header on the grounds it is not supported by the cited evidence that follows, is not material, and purports to state an issue or legal conclusion.

Because PSMF No. 170 mischaracterizes the record and is not material, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

171.

Guerra apologized to Cliatt and Martin; he does not remember seeing GW when he returned to the house. (Doc. 87, Guerra Dep. 152:11-20).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 74.

172.

Guerra told Cliatt and Martin that he would report the incident to chief division counsel and he took the post-event photos "in case they were looking for reimbursement, the damage to the front door." (Doc. 87, Guerra Dep. 204:4-8).

**RESPONSE:** Undisputed. Defs.' Statement ¶ 74. *See also* Defs.' Resp. to PSMF No. 170.

173.

Guerra thought that Mr. Cliatt and Ms. Martin would call the FBI office and document the incident. (Doc. 87, Guerra Dep. 147:1-2).

**RESPONSE:** Defendants object to PSMF No. 173 on the grounds that it is not material and to the extent it mischaracterizes Guerra's testimony. The question posed to Guerra was whether he asked any other members of the SWAT team to write a statement about the incident, and he testified that he did

not because they would not be required to write a statement, he already was documenting it, and it would be documented in response to any call by Plaintiffs. Guerra Dep. (Doc. 87), at 146:13-147:14. *See also* Defs.' Resp. to PSMF No. 170. Because PSMF No. 173 is not material, and to the extent PSMF No. 173 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

174.

Guerra also thought that the chief division counsel would document the incident as well. (Doc. 87, Guerra Dep. 147:3-4).

**RESPONSE:** Defendants object to PSMF No. 174 on the ground that it is not material and to the extent it mischaracterizes his testimony. *See* Defs.' Resp. to PSMF No. 170. Because PSMF No. 174 is not material, and to the extent PSMF No. 174 mischaracterizes the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

175.

Guerra took photographs of Plaintiffs' home when he returned; he took these with his cell phone and uploaded them to the case file; he took these on his own, not pursuant to any policy or supervisor directive. (Doc. 87, Guerra Dep. 152:21-153:1, 204:2-13).

**RESPONSE:** Defendants object to PSMF No. 175 on the grounds that it is not material and, to the extent it purports to allege that Guerra violated policy or

supervisor directive by taking the photographs, it is not supported by the cited evidence. *See also* Defs.' Resp. to PSMF No. 170. Because PSMF No. 175 is not material, and to the extent PSMF No. 175 is not supported by the record, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

176.

FD-302 notes that "SA Guerra observed damage to the interior and exterior of the front door, as well as a burn mark on the foyer floor. SA Guerra took photographs of the damage and the exterior of the residence in the daylight;" these photographs are Exhibit 18. (Doc. 87, Guerra Dep. 204:14-; Exs. 17, 18). Guerra took the photos so Plaintiffs could be reimbursed for the damage to the door. (Doc. 87, Guerra Dep. 245:7-13).

**RESPONSE:** Defendants do not dispute the first sentence of PSMF No. 176 but object to the second sentence of PSMF No. 176 on the grounds that it is not material and purports to state a legal conclusion. *See* Defs.' Resp. to PSMF No. 170. Because the second sentence of PSMF No. 176 is not material and purports to state a legal conclusion, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

177.

It's up to the legal department whether reimbursed but he "wanted them to get it," but he was facilitating the process by taking the photos (Doc. 87, Guerra Dep. 245:14-246:4).

**RESPONSE:** Defendants object to PSMF No. 177 on the ground that it is not material to the issues before the Court on summary judgment and to the extent the cited testimony is inadmissible because it lacks foundation. *See* Defs.' Resp. to PSMF No. 170. Because PSMF No. 177 is not material to the issues before the Court on summary judgment and lacks foundation with respect to Guerra's testimony about the FBI legal department, the Court should not consider it for purposes of Defendants' Motion for Summary Judgment.

"Damages"

178.

Plaintiffs suffered significant and well documented mental health injuries requiring long term treatment. Each Plaintiff was diagnosed with posttraumatic stress disorder by multiple providers. (Ciatt Dep. Doc. 85 at 74 (Cliatt); Martin Dep., Doc. 86 at 84 (Martin), 101 (G.W.)).

**RESPONSE:** Defendants object to PSMF No. 178 on the grounds that it purports to state a legal conclusion, is not supported by the cited evidence, and is not material to the issues raised by Defendants' Motion for Summary Judgment. Because PSMF No. 178 purports to state a legal conclusion, is not supported by the cited evidence, and is not material, the Court should not consider PSMF No. 178 for purposes of Defendants' Motion for Summary Judgment.

Respectfully submitted, this 28th day of September, 2021.

KURT R. ERSKINE
*Acting United States Attorney*

s/ Aaron J. Ross
AARON J. ROSS
*Assistant United States Attorney*
Georgia Bar No. 461981
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone: 404-581-6228
Facsimile: 404-581-6181

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the documents to which this certificate is attached have been prepared in Book Antiqua font, 13-point type, which is one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C).

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to the following opposing counsel of record:

Jeffrey R. Filipovits
Spears & Filipovits, LLC
1126 Ponce de Leon Ave.
Atlanta, Georgia 30306

Lisa C. Lambert
Law Office of Lisa C. Lambert
245 N. Highland Ave., Suite 230-139
Atlanta, Georgia 30307

*Counsel for Curtrina Martin, et al.*

Zack Greenamyre
Mitchell & Shapiro LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305

*Counsel for Hilliard Toi Cliatt*

This 28th day of September, 2021.

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

*Counsel for Defendants*