UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CURTRINA MARTIN et al., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:19-cv-04106-JPB |
| HILLARD TOI CLIATT, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:19-cv-04180-JPB |

## **ORDER**

Before the Court are the following motions: (i) the United States of America's ("United States") Motion for Reconsideration ("United States' Motion"), ECF No. 133; and (ii) Plaintiffs Curtrina Martin, Martin's minor child and Hilliard Toi Cliatt, III's (collectively "Plaintiffs") Motion for Reconsideration ("Plaintiffs' Motion"), ECF No. 134. Having fully considered the motions, the Court finds as follows:

I.  **BACKGROUND**

Plaintiffs asserted claims against the United States under the Federal Tort Claims Act (the "FTCA") and against FBI Special Agent Lawrence Guerra ("Guerra") under the Fourth Amendment in connection with a warrant that was inadvertently executed at Plaintiffs' home.[1]

On September 23, 2022, the Court entered an order granting summary judgment to the United States and Guerra on Counts III, IV, V and VI of the complaints and denying summary judgment as to Counts I and II ("Order"). As set forth in the Order, Guerra was dismissed from the action on qualified immunity grounds, and certain FTCA claims against the United States remained.

The United States seeks reconsideration of the Order on two grounds. First, it argues that the Eleventh Circuit Court of Appeals' opinion in *Kordash v. United States*, 51 F.4th 1289 (11th Cir. 2022), which was issued approximately one month after this Court issued its Order, is an intervening development in controlling law that requires dismissal of Plaintiffs' FTCA claims. Second, the United States contends that the Court incorrectly declined to apply certain privileges and immunities against Plaintiffs' FTCA claims.

---

[1] Curtrina Martin and her child filed a joint complaint, and Hilliard Cliatt filed separately. The cases are now consolidated.

Plaintiffs also seek reconsideration of the Court's Order. They assert that the Court misunderstood and erred in its assessment of their spoliation argument relating to a GPS unit Guerra destroyed after the incident.

## II.  ANALYSIS

"Courts may grant relief under . . . Local Rule 7.2E only if the moving party clears a high hurdle." *Chesnut v. Ethan Allen Retail, Inc.*, 17 F. Supp. 3d 1367, 1370 (N.D. Ga. 2014). Indeed, Local Rule 7.2(E) dictates that "[m]otions for reconsideration shall not be filed as a matter of routine practice" and may be filed only when "absolutely necessary." "Reconsideration is only 'absolutely necessary' where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003).

Thus, Local Rule 7.2E does not afford a dissatisfied party "an opportunity to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of [the order], introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Chesnut*, 17 F. Supp. 3d at 1370. In other words, a motion for reconsideration is not "an opportunity to show the court how it 'could have done it better.'" *Bryan*, 246 F.

Supp. 2d at 1259 (quoting *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995)).

> **1. Whether the opinion in *Kordash* is a development in controlling law that requires dismissal of Plaintiffs' remaining FTCA claims**

The United States argues that the *Kordash* opinion, which was entered after the Court issued its Order in this case, is relevant to the question of whether the Supremacy Clause of the United States Constitution bars Plaintiffs' state law claims brought pursuant to the FTCA. The United States urges the Court to find that it does.

Plaintiffs challenge whether the United States has carried its burden for reconsideration on this ground. They assert that the argument for dismissal of the FTCA claims under the Supremacy Clause is not a new development in the law and is rather a "straightforward application" of the Eleventh Circuit's opinion in *Denson v. United States*, 574 F.3d 1318 (11th Cir. 2009), which was entered more than a decade ago. As support for their position, Plaintiffs point to the Eleventh Circuit's statement in *Kordash* that "the only difference between *Denson* and [*Kordash*] is that [the plaintiff in *Kordash*] split his claims into two lawsuits instead of joining them into one." *Kordash*, 51 F.4th at 1294. In short, Plaintiffs maintain that the United States had an opportunity to raise the Supremacy Clause

4

argument sooner but failed to do so, and it cannot offer an argument for the first time in its motion for reconsideration.

In response, the United States argues that the *Kordash* opinion represents an intervening development because unlike in *Denson*, the Eleventh Circuit directly stated in *Kordash* that the first prong of the test to determine if the Supremacy Clause applies is satisfied by a finding that the official was acting within the scope of his discretionary authority.  The United States also contends that it could not have raised its Supremacy Clause argument sooner or waived it because the argument did not become ripe until the Court granted qualified immunity to Guerra.

The Court acknowledges that the United States could have possibly raised its Supremacy Clause argument earlier.  However, *Denson* is not directly on point here, and the *Kordash* opinion does brings additional clarity to the question of whether the Supremacy Clause bars the FTCA claims under the circumstances of this case.  As such, the Court finds that this development in controlling law warrants reconsideration of the Order.

With respect to the substantive question of whether Plaintiffs' FTCA claims are barred by the Supremacy Clause, the Court must decide whether (i) Guerra's actions had "'some nexus with furthering federal policy'"; and (ii) his actions

5

"'can reasonably be characterized as complying with the full range of federal law.'" *Kordash*, 51 F.4th at 1293 (citation omitted). "If the answer to these questions is yes, application of state law, to the extent it unavoidably conflicts with federal law, has no effect, as it would frustrate and impede the compelling federal interest of allowing federal officers to effectively discharge their duties." *Denson*, 574 F.3d at 1348.

According to the opinion in *Kordash*, the first prong of the analysis is satisfied if the official was acting within the scope of his discretionary duty. *See Kordash*, 51 F.4th at 1294. The second prong is satisfied if the official's actions are found to have complied with the applicable constitutional standard. *See id*. These conclusions can be derived from a qualified immunity analysis. *See id*.

Here, the first prong of the Supremacy Clause analysis is satisfied because, as set forth in the qualified immunity discussion of the Court's Order, Plaintiffs do not dispute that Guerra was acting within the scope of his discretionary authority.

Plaintiffs, however, dispute that the second prong of the test is satisfied.[2] They contend that the Court did not conclude that Guerra complied with the

---

[2] Plaintiffs derive a three-part test from the *Kordash* opinion, including a requirement that the official "acted consistently with preeminent federal interests of protecting our international borders." This formulation of the requisite analysis is incorrect and not supported by the *Kordash* and *Denson* opinions. The Court's

6

requirements of the Fourth Amendment because the Court's Order was based only on the second prong of the qualified immunity test, *i.e.*, whether Guerra violated clearly established law.

Plaintiffs are correct that the Court's conclusion was based on the second prong of the qualified immunity test. The Court found that the law was not clearly established at the time of the incident such that Guerra would have known that his actions in this case would be deemed unreasonable and violative of the law.

In the process of reaching that conclusion, however, the Court expressly considered whether Guerra's actions violated the Fourth Amendment. Noting that the "'ultimate touchstone of the Fourth Amendment is reasonableness,'" the Court conducted an extensive analysis of relevant cases as compared to the facts of this case and ultimately found that Guerra's actions "were reasonable under the circumstances." ECF No. 124 at 21. The Court emphasized that Guerra's mistake is not a basis to find that he acted unreasonably and in violation of the law. The Court also cited several cases where courts have granted qualified immunity in similar circumstances. In all, even though the Court's Order did not rest on the first prong of the qualified immunity test (whether Guerra violated the Fourth

---

analysis relies on the two-prong test described in those opinions and evaluates Plaintiffs' arguments as they relate to those prongs.

Amendment), the Court explicitly considered this question and found that Guerra did not violate the law.

Because Guerra was acting within the scope of his discretionary duty, and his actions did not violate the Fourth Amendment, both prongs of the Supremacy Clause analysis are satisfied. Accordingly, the Supremacy Clause bars Plaintiffs' state law claims brought pursuant to the FTCA, and Counts I and II of the complaints are dismissed.

> **2. Whether the Court correctly declined to apply certain privileges and immunities against Plaintiffs' FTCA claims**

The United States contends that the Court's rejection of certain state law defenses to the FTCA claims improperly creates a strict liability standard for FTCA claims. However, this argument is not based on any of the allowable grounds for reconsideration. It does not point to new evidence, clear error or an intervening change in law. To the contrary, the United States' discussion of the issue reflects mere disagreement with the Court's conclusion and simply repackages and extends already rejected arguments to see if the Court will change its mind. Accordingly, reconsideration of this point is not warranted.[3]

---

[3] In any event, the United States' argument is moot given the Court's dismissal of the FTCA claims on Supremacy Clause grounds.

### 3. Whether the Court Misunderstood Plaintiffs' Spoliation Argument

Section III(C) of Plaintiffs' brief in opposition to summary judgment is titled "Spoilation." This section of the brief cites the legal standard for spoliation and discusses whether a reasonable factfinder could conclude that Guerra intentionally destroyed the GPS unit on which he states he relied to identify the subject home. As part of this discussion, Plaintiffs explained that they "have not yet moved for spoliation sanctions against Defendants because . . . the critical question for imposing sanctions is a factual one for the factfinder." ECF No. 101 at 31 n.13. Plaintiffs further "propose[d] that [the spoliation] question be posed to the jury via special interrogatory (if proceeding via jury trial for the *Bivens* claim) or to the Court (in a FTCA trial)." *Id*. In light of Plaintiffs' assertions, the Court noted in its Order that it did not "address the arguments in the 'Spoilation' section of Plaintiffs' response brief because, as Defendants point out, Plaintiffs do not request any specific relief." ECF No. 124 at 37 n.16.

Plaintiffs seize on this footnote to argue that the Court did not consider their argument that Guerra's qualified immunity defense should be rejected because he intentionally destroyed the GPS unit.

As shown above, Plaintiffs did not argue that Guerra should be denied qualified immunity simply based on spoliation of evidence. Plaintiffs described their argument opposing Guerra's qualified immunity defense as follows:

> Factual issues preclude summary judgment of Plaintiffs' *Bivens* claim because a jury could find Guerra did not engage in any reasonable or meaningful effort to lead the SWAT team to the correct house because he did not do the site survey or drive-by as he claimed that he did. And Defendant Guerra engaged in spoliation of key evidence that deserves sanctions.

ECF No. 101 at 15.

The GPS unit was mentioned in Plaintiffs' brief in the context of their argument that if the unit were available, it would show that Guerra did not conduct the Site Survey and Drive-by of the location as he asserts and that his preparation to serve the warrant was therefore not reasonable. *See id*. at 15-16. Plaintiffs concluded that the question of whether Guerra completed these tasks created a genuine issue of material fact barring summary judgment. *See id*.

The Court's Order specifically addresses this argument and applies an inference that Guerra did not conduct the Site Survey and Drive-by. For example, the Court stated:

> Here, the Court has reservations regarding whether Plaintiffs' argument that Guerra failed to complete the Site Survey and the Drive-By presents a genuine dispute of the facts. The evidence Plaintiffs offer in support of their contention requires inferential leaps that are not necessarily supported by the record.

10

> \*\*\*
>
> To survive summary judgment, Plaintiffs must do more than raise metaphysical doubt regarding the facts. They must produce substantial evidence demonstrating that there is a genuine issue of material fact.
>
> \*\*\*
>
> Even if, for argument's sake, the Court credits Plaintiffs' argument that Guerra did not conduct the Site Survey and the Drive-By, the record contains undisputed evidence of several other steps that Guerra took to ascertain and identify the home described in the warrant. . . . These steps constitute considerably more than nothing. . . . The Court considers Guerra's overall preplanning to constitute significant precautionary measures to avoid mistake. The Court further finds that those measures were reasonable under the circumstances.

ECF No. 124 at 20-21 (citations and quotation marks omitted).

In sum, the Court acknowledged and contended with the consequence of the unavailable GPS data and still found that Guerra was entitled to qualified immunity. The only issue the Court did not address is whether sanctions should issue for Guerra's destruction of the device—an issue that Plaintiffs, themselves, deferred for a later date.

Like the United States' argument in section II(2) above, Plaintiffs' argument here appears to be an attempt to relitigate the underlying conclusion of the Court's Order with the hope that the Court will rule differently. That is not a proper basis for a motion for reconsideration. Consequently, Plaintiffs' Motion is denied.

### III.   CONCLUSION

In accordance with the Court's analysis herein, the Court **GRANTS** the United States' Motion (ECF No. 133) and **DENIES** Plaintiffs' Motion (ECF No. 134). As a result, Counts I and II of Plaintiffs' complaints are **DISMISSED**. Since these dismissals resolve the only remaining claims in this matter, the Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 30th day of December, 2022.

J. P. BOULEE
United States District Judge