[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 23-10062

Non-Argument Calendar

_____

CURTRINA MARTIN,
Individually and as Parent and Next friend of,
G.W.,
a Minor,
HILLIARD TOI CLIATT,

                                                          Plaintiffs-Appellants,

*versus*

UNITED STATES OF AMERICA,
LAWRENCE GUERRA,
SIX UNKNOWN FBI AGENTS,

                                                          Defendants-Appellees.

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 2 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 2 of 18

2                    Opinion of the Court                    23-10062

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-04106-JPB

_____

Before LAGOA, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Curtrina Martin, her minor child, G.W., and Hilliard Toi Cliatt (collectively, "Appellants") appeal the dismissal of their action for violation of the Fourth Amendment to the United States Constitution. In October 2017, agents of the Federal Bureau of Investigation ("FBI") executed a no-knock search warrant at Appellants' house which was not the address identified in the warrant. The target address—which was reportedly the home of Jospeh Riley, a violent gang member—was located approximately a block away from Appellants' house and shared similar conspicuous features with Appellants' house.

Appellants initiated an action against the FBI agents pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the United States under the Federal Tort Claims Act ("FTCA"), alleging that the FBI agents violated their Fourth Amendment rights and were also liable for damages under Georgia tort law. The district court granted summary judgment in favor of the FBI agents and the United States.

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 3 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 3 of 18

23-10062                Opinion of the Court                    3

After careful review of the record and the parties' briefs, we affirm the district court's grant of summary judgment and dismissal of Appellants' claims.

I.  **BACKGROUND**

On October 18, 2017, during the predawn hours, a team of six unidentified FBI agents—led by special agent, Lawrence Guerra—executed a presumably valid search warrant at 3756 Denville Trace, SW, Atlanta, Georgia 30331, Appellants' home. The target location of the search warrant was 3741 Landau Lane, SW, Atlanta, Georgia 30331, which is located approximately three houses away from Appellants' house. Despite taking several precautionary measures to ensure proper execution of the search warrant, Guerra and the FBI agents inadvertently executed the search warrant at the wrong house.

### A. *The FBI's Operation Red Tape*

In 2015, the FBI initiated Operation Red Tape—an operation concerning violent gang activity in Georgia. The Operation resulted in a criminal indictment and the issuance of arrest warrants for several individuals, including Riley. The FBI assigned Guerra to lead a Special Weapons and Tactics ("SWAT") team that was tasked with executing the arrest warrant for Riley at 3741 Landau Lane.

In preparation for the warrant execution, the FBI created a general operation order and a SWAT addendum to the operation order. The SWAT addendum contained photographs of Riley, a description of his violent history and gun possession, a photograph of 3741 Landau Lane, SW, Atlanta, Georgia 30331, an overhead

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 4 of 20
USCA11 Case: 23-10062    Document: 33-1    Date Filed: 04/22/2024    Page: 4 of 18

4                       Opinion of the Court                    23-10062

map image of the neighborhood, and directions to 3741 Landau Lane.  Prior to the warrant execution, Guerra reviewed a copy of the general operation order and the SWAT addendum.

## B. *Pre-Execution Preparation*

The FBI has a standard operating procedure that its agents conduct a site survey or a drive-by prior to executing a high-risk warrant such as the one for Riley's arrest.  However, the FBI does not have any policies governing how to locate or navigate to a target address nor does it prohibit using a personal GPS to locate a target address.

Shortly before the warrant execution, Guerra and another FBI agent, Gregory Donovan conducted a site survey of 3741 Landau Lane during daylight hours.  They used the Google Maps application on Donovan's cellphone to navigate to 3741 Landau Lane.

During the site survey, Guerra took several photographs of 3741 Landau Lane.  He also documented specific physical features of 3741 Landau Lane that he believed were unique to the house.  He noted that the house was beige and split-level; it was located on a corner lot; it had a side-entry garage on a separate street that ran perpendicular to the front door; it had a very large tree in the front yard; and the house number appeared on a small mailbox and not on the front of the house.

After Guerra completed the site survey, he identified a staging area where the SWAT team would meet prior to the warrant execution.  Additionally, he made tactical notes of the order in which each SWAT team member would position themselves

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 5 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 5 of 18

23-10062                Opinion of the Court                       5

outside of 3741 Landau Lane and assigned tasks to each SWAT team member for the warrant execution.

In addition to completing the site survey, Guerra attended an operational briefing regarding the warrant execution. The briefing consisted of several presentations that included photographs of Riley and 3741 Landau Lane.

On the day of the warrant execution, Guerra and FBI special agent, Michael Lemoine, conducted a pre-raid drive-by of 3741 Landau Lane. It was completely dark outside when they conducted the pre-raid drive-by. Guerra used his personal GPS device to navigate to 3741 Landau Lane. Although he entered 3741 Landau Lane into his GPS device, it directed him and Lemoine to 3756 Denville Trace—Appellants' house. Appellants' house is approximately 436 feet from 3741 Landau Lane. Although Appellants' house is located on Denville Trace, it faces Landau Lane.

Guerra believed he was at 3741 Landau Lane because Appellants' house had many of the same features that he noted for the target address during his site survey. Similar to 3741 Landau Lane, Appellants' house was beige; it was located on the corner of the street; it was split-level; it contained a stairwell to the front door; there was a very large tree in front of the house; it had a side-entry garage on a separate street that ran perpendicular to the front door; and the house number did not appear anywhere on the house, but instead appeared on the mailbox. Although the mailbox is visible from the street, the house number is not.

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 6 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 6 of 18

6                     Opinion of the Court                  23-10062

Guerra and Lemoine noticed a black Camaro in Appellants' driveway that Guerra did not recall seeing when he completed his site survey of 3741 Landau Lane a few days earlier. They would later use the black Camaro and a large tree as reference points when searching for the target address for the warrant execution.

### C.   *Search Warrant Execution*

Around 3:30 a.m. on the day of the warrant execution, Guerra arrived at the staging area and briefed the SWAT team and officers from the Atlanta Police Department ("APD"). Guerra showed the SWAT team members photographs of 3741 Landau Lane and Riley, and he briefed the agents on his tactical plan regarding the warrant execution.

Following the briefing and while it was still dark outside, the SWAT team and APD officers—led by Guerra—headed towards the target address in a caravan of vehicles. When Guerra spotted the black Camaro, he stopped his vehicle in front of Appellants' house, believing that he was at 3741 Landau Lane, and the other vehicles followed suit. The SWAT team—dressed in full tactical gear and armed with rifles and handguns—quickly exited the vehicles and reported to their assigned locations surrounding Appellants' house. Guerra knocked and announced the presence of law enforcement before an agent breached the front door. Another agent deployed a flashbang at the entrance of the home. The SWAT team entered the house.

When the SWAT team entered Appellants' house, Cliatt—afraid that their home was being burglarized—ran towards the

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 7 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 7 of 18

23-10062               Opinion of the Court                          7

bedroom closet where he kept a shotgun for protection. As Cliatt ran towards the bedroom closet, Martin bolted towards the door to get her then seven-year-old son. However, Cliatt pulled Martin towards their bedroom closet, and the two hid in there.

A SWAT team member located Cliatt and Martin in their bedroom closet, dragged Cliatt out of the closet and onto the bedroom floor with guns pointed at him, and handcuffed him. During the same time, Martin fell in the closet, and another SWAT team member pointed a gun in her face while yelling at her to keep her hands up. No one handcuffed or touched Martin. Guerra entered the bedroom and realized that Cliatt did not have the same face and neck tattoos that he observed in the photographs of Riley, so he asked Cliatt for his name and address. Cliatt provided Guerra with his name and address.

While Guerra was in the bedroom questioning Cliatt, Lemoine noticed a piece of mail that had a different address than 3741 Landau Lane and notified Guerra that they were at the wrong address. Upon realizing that they were at the wrong house, Guerra immediately ended the raid: an agent lifted Cliatt off the ground and uncuffed him; Guerra told Cliatt that he would come back later and explain what happened; and the agents left the house.

After leaving Appellants' house, Guerra and the SWAT team executed the search warrant at 3741 Landau Lane where they arrested Riley. After executing the search warrant at the target address, Guerra returned to Appellants' house, apologized to them, documented the damages caused by the mistaken raid, provided

them with the contact information for his supervisor, and advised them that the FBI would handle the damage repairs.

Shortly after the mistaken raid at Appellants' house, Guerra reported the incident to the appropriate FBI representative and completed an incident report. Guerra also stopped using his personal GPS for warrant executions and eventually threw it away.

### D. Lawsuit

In September 2019, Appellants brought a *Bivens* claim against Guerra and the six unidentified FBI agents who participated in the raid, alleging that Guerra and the agents' mistaken execution of the search warrant at their house violated their Fourth Amendment rights. They also brought state law claims for negligence, negligent/intentional infliction of emotional distress, trespass and interference with private property, false arrest/false imprisonment, and assault and battery against the United States under the FTCA. Guerra and the government moved for summary judgment on Appellants' claims.

The district court granted in part and denied in part the motion for summary judgment. Specifically, the district court granted summary judgment on Appellants' *Bivens* claim and state law claims for negligence, negligent infliction of emotional distress, and trespass. However, the district court denied summary judgment on the false imprisonment and assault and battery claims.

Following the district court's grant of partial summary judgment, the parties filed cross motions for reconsideration. The district court held that, given our recent decision in *Kordash v. United*

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 9 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 9 of 18

23-10062               Opinion of the Court                        9

*States*, 51 F.4th 1289 (11th Cir. 2022), the Supremacy Clause defense barred Appellants' remaining FTCA tort claims.

The district court entered judgment and Appellants timely appealed.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006), and denial of a motion for reconsideration for abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007). We also review *de novo* the district court's qualified immunity analysis. *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021). We may affirm a district court's grant of summary judgment for any reason supported by the record. *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023).

Summary judgment is appropriate when no genuine issue of material fact exists. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). An issue of fact is not genuine unless a reasonable jury could return a verdict in favor of the non-moving party. *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994)). At the summary judgment stage, we construe all facts and make all reasonable inferences in favor of the non-moving party. *Baxter*, 54 F.4th at 1253 (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)). However, we must only view the evidence in a light most favorable to the non-moving party to the extent that the non-moving party's position is supported by the record. *Id.*

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 10 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 10 of 18

10                    Opinion of the Court                    23-10062

Therefore, simply because some alleged factual dispute exists between the parties does not mean summary judgment cannot be otherwise granted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. The District Court Properly Determined that Qualified Immunity Protects Guerra from Suit.

Appellants argue that Guerra is not entitled to qualified immunity because his mistaken execution of the search warrant at their house was not a reasonable mistake and, therefore, his conduct violated the Fourth Amendment.

Qualified immunity protects government actors performing discretionary functions from civil liability. *Andujar v. Rodriquez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (quotation marks and citation omitted). Government officials are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Merricks v. Adkisson*, 785 F.3d 553, 558 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To "resolv[e] questions of qualified immunity at summary judgment," we conduct "a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (quotation marks and citation omitted). First, we ask "whether the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a federal right." *Id.* at 655–56 (alterations adopted) (quotation marks and citation omitted). Next, we must decide "whether the right in question was 'clearly established' at the time of the

23-10062               Opinion of the Court                        11

violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). To determine whether a right is clearly established, we ask whether the law on the date of the alleged misconduct gave the defendant fair notice that their alleged misconduct was unconstitutional. *Hardigree*, 922 F.3d at 1224 (citing *Hope*, 536 U.S. at 741).

Here, it is undisputed that Guerra was acting within his discretionary authority, so the sole issue for our resolution is whether his actions violated clearly established law.

The Fourth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals from unreasonable searches of their property. *Gennusa v. Canova*, 748 F.3d 1103, 1109–10 (11th Cir. 2014). "[A] Fourth Amendment search occurs 'when the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *Id.* at 1110 (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). However, officers who make "honest mistakes" during "the dangerous and difficult process of . . . executing search warrants" do not violate the Fourth Amendment. *Maryland v. Garrison*, 480 U.S. 79, 87 (1987). The officer is entitled to qualified immunity so long as he "engage[d] in reasonable efforts to avoid error." *Hartsfield v. Lemacks*, 50 F.3d 950, 955 (11th Cir. 1995). Thus, the "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quotation marks omitted) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). Reasonableness is measured "by examining the totality of the circumstances." *Id.*

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 12 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 12 of 18

12                     Opinion of the Court                     23-10062

In *Hartsfield*, we explained that an officer who makes "reasonable effort[s] to ascertain and identify the" target address of a valid search warrant complies with the Fourth Amendment even if error is ultimately not averted. 50 F.3d at 954–55 (quoting *Garrison*, 480 U.S. at 88–89). Appellants contend that Guerra failed to make reasonable efforts to identify 3741 Landau Lane before mistakenly executing the warrant at their house. Specifically, Appellants argue that Guerra did not conduct a site survey or drive-by of 3741 Landau Lane prior to the warrant execution. Assuming Guerra failed to conduct a survey or pre-raid drive-by, the other actions he took to identify 3741 Landau Lane were "consistent with a reasonable effort to ascertain and identify the place intended to be searched." *See Hartsfield*, 50 F.3d at 955 (quoting *Garrison*, 480 U.S. at 88–89). He reviewed the operation order and SWAT addendum; he attended an operational briefing that consisted of several presentations displaying photographs of Riley and 3741 Landau Lane; and he selected a staging area and made tactical notes that considered the location and features of the target address.

Additionally, the fact that the target address and Appellants' house share several conspicuous features demonstrates that Guerra's execution of the warrant at the wrong house constituted an inadvertent mistake. Both houses are beige in color, located on a corner lot, have a large tree in the front, contain a stairwell to the front door, are split-level, and have a side-entry garage on a separate street that runs perpendicular to the front door. Further, Guerra and the SWAT team executed the warrant while it was still dark outside and difficult to ascertain the house numbers on the

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 13 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 13 of 18

23-10062               Opinion of the Court                    13

mailboxes.  Guerra and the SWAT team had to enter a potentially dangerous situation to execute the warrant—the home of a violent gang member.  Therefore, the decisions that Guerra made—albeit mistaken—in the rapidly-changing and dangerous situation of executing a high-risk warrant at night constitute the kind of reasonable mistakes that the Fourth Amendment contemplates.  *See, e.g., Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection" (internal quotation marks and citation omitted)); *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003) ("Officers facing split-second decisions in dangerous or life-threatening situations are seldom provided with fair warning, notice or guidance by a general requirement of 'reasonableness.'").

Guerra's preparatory steps before executing the warrant complied with the FBI's standard practices/procedures.  The FBI affords its agents discretion in preparing for warrant executions: it has no official policy or practice with respect to how agents are to locate or navigate to the target address of a search warrant.  Additionally, while it is standard FBI practice to conduct a drive-by or site survey prior to executing a warrant, those preparatory steps are fact-specific and left to the agent's discretion.

In sum, based on the facts and circumstances of this case, we conclude that the law at the time did not clearly establish that Guerra's preparatory steps before the warrant execution would

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 14 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 14 of 18

14                    Opinion of the Court                 23-10062

violate the Fourth Amendment. Therefore, the district court did not err in granting qualified immunity.

> B. *The District Court Correctly Ruled that the Supremacy Clause and the Discretionary Function Exception Bar Appellants' FTCA Claims.*

Under the FTCA, a plaintiff may "bring certain state-law torts against" the United States. *Brownback v. King*, 592 U.S. 209, 210 (2021). The FTCA waives the federal government's sovereign immunity for the wrongful or negligent acts or omissions of its employees if a private person, under the same circumstances, would be liable under the law of the state where the alleged act or omission occurred. *Swafford v. United States*, 839 F.3d 1365, 1369 (11th Cir. 2016) (citing 28 U.S.C. § 2674).

However, the FTCA exempts from liability state-tort claims arising from a government official's performance of a duty or function that involves discretion. *Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021). The discretionary function exception to the FTCA's waiver of sovereign immunity exists to "prevent judicial second guessing of . . . administrative decisions." *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

To determine whether the discretionary function exception applies in a given circumstance, courts employ a two-factor test: they examine (1) whether the alleged act was discretionary in nature meaning that the act "involved an element of judgment or choice[;]" and (2) whether the act represented the kind of conduct "that the discretionary function exception was designed to shield."

23-10062               Opinion of the Court                        15

*Swafford*, 839 F.3d at 1370 (first citing *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531 (1988); and then citing *Gaubert*, 499 U.S. at 323). "The discretionary function exception applies *unless* a source of federal law 'specifically prescribes' a course of conduct." *Shivers*, 1 F.4th at 931 (emphasis in original). The exception also applies irrespective of whether the government official abused his discretion. *Id.* at 930 (quoting 28 U.S.C. § 2680(a)).

Similar to the discretionary function exception, the Supremacy Clause ensures that states do not impede or burden the execution of federal law. *Denson v. United States*, 574 F.3d 1318, 1336–37 (11th Cir. 2009). The government may invoke the Supremacy Clause against state-tort liability if it demonstrates that the government "official's acts have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law." *Kordash*, 51 F.4th at 1293 (internal quotation marks and citations omitted). A government official's acts bear "some nexus with furthering federal policy" if he acted within the scope of his discretionary authority. *Id.* at 1294. Similarly, a government official's acts could "reasonably be characterized as complying with the full range of federal law" if his acts complied with the relevant constitutional standard—the Fourth Amendment. *Id.*

When faced with the determination of whether the actions a law enforcement officer took comply with the Fourth Amendment, courts employ an "objective reasonableness" standard and consider whether "the facts available to the officer at the moment of the seizure or the search [make] a [person] of reasonable

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 16 of 20
USCA11 Case: 23-10062    Document: 33-1    Date Filed: 04/22/2024    Page: 16 of 18

16                    Opinion of the Court                    23-10062

caution . . . belie[ve] that the action taken was appropriate." *Croom v. Balkwill*, 645 F.3d 1240, 1249 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (11th Cir. 1995)).

We conclude that the discretionary function exception bars Appellants' tort claims for trespass and interference with private property, negligent/intentional infliction of emotional distress, and negligence. The government has satisfied both elements of the discretionary function exception. With respect to the first prong, the record—viewed in the light most favorable to Appellants—evinces that Guerra enjoyed discretion in how he prepared for the warrant execution. As we previously explained, the FBI did not have stringent policies or procedures in place that dictate *how* agents are to prepare for warrant executions.

Furthermore, the preparatory actions Guerra took before the warrant execution satisfy the second element of the discretionary function exception test. In *Mesa v. United States*, we explained that a federal officer's "decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis." 123 F.3d 1435, 1438 (11th Cir. 1997). Although it is unfortunate that despite his preparatory efforts, Guerra executed the warrant at the wrong house, his actions, nevertheless, "fall squarely within the discretionary function exception." *Shivers*, 1 F.4th at 929.

The Supremacy Clause bars Appellants' remaining FTCA claims for false imprisonment and assault and battery. The district court initially denied summary judgment on Appellants' false

23-10062               Opinion of the Court                    17

imprisonment and assault and battery claims on grounds that the discretionary function exception could not defeat those claims because under the FTCA's private person standard, Georgia's citizen's arrest statute does not contemplate the good faith or reasonableness defenses that the government asserted. However, on the government's motion for reconsideration, the district court granted summary judgment on those claims, finding that our recent decision in *Kordash* mandates dismissal of those claims.

In *Kordash*, we clarified that "the inquiry that determines if the Supremacy Clause bars state-law liability is whether a federal official's acts 'have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of [the Fourth Amendment].'" 51 F.4th at 1293 (quoting *Denson*, 574 F.3d at 1348). With respect to the first element, there is no doubt that Guerra acted within the scope of his discretionary authority when he prepared for and executed the search warrant. The analysis we must conduct to examine whether Guerra complied with the full range of the Fourth Amendment is the same as the inquiry we employed in the qualified immunity analysis to determine whether his actions violated the Fourth Amendment. *See id.* at 1294. As we already explained that Guerra's actions did not violate the Fourth Amendment, the government has satisfied both elements of the Supremacy Clause analysis. Accordingly, the Supremacy Clause bars Appellants' FTCA claims for false imprisonment and assault and battery.

Case 1:19-cv-04106-JPB   Document 147   Filed 04/22/24   Page 18 of 20
USCA11 Case: 23-10062   Document: 33-1   Date Filed: 04/22/2024   Page: 18 of 18

18                    Opinion of the Court                    23-10062

## IV. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment based on qualified immunity in favor of Guerra and dismissal of the FTCA claims against the United States on the grounds that the Supremacy Clause and the discretionary function exception bar those claims.

**AFFIRMED.**

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 22, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-10062-JJ
Case Style: Curtrina Martin, et al v. USA, et al
District Court Docket No: 1:19-cv-04106-JPB

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion